UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-cv-80803

ROBERT RICHARDSON,
JUAN GUZMAN & ADAM EURICH
Individually, Collectively and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216.

Plaintiffs,

Vs.

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL &
LAURA PORTER
_____/

## PLAINTIFFS' SECOND AMENDED FAIR LABOR STANDARDS ACT COMPLAINT

Plaintiffs ROBERT RICHARDSON ("RICHARDSON"), JUAN GUZMAN ("GUZMAN") & (ADAM EURICH) on behalf of themselves, individually, and collectively, and all those similarly situated, sues defendants, FLORIDA DRAWBRIDGES INC., d/b/a FDI SERVICES ("FDI"), ERIC OBEL ("OBEL"), & LAURA PORTER (PORTER) (Collectively, "FDI", "OBEL" & "PORTER" are "Defendants"), for damages due to Defendants' violation of the Fair Labor Standards Act (FLSA), and retaliation against Plaintiff EURICH, and aver as follows:

### PARTIES, JURISDICTION AND VENUE

1. ROBERT RICHARDSON is sui juris and lives in Martin County Florida within the SDFL.

2. JUAN GUZMAN is sui juris and lives in Palm Beach County Florida.

3. ADAM EURICH is sui juris and lives in Palm Beach County Florida.

4. ERIC OBEL is sui juris, and upon information and belief lives in the SDFL.

1

5. LAURA PORTER is sui juris, and upon information and belief lives in the SDFL.

6. FLORIDA DRAWBRIDGES INC., d/b/a FDI Services is headquartered in Pompano Beach Florida, within the SDFL.

7. The employment at issue is/was in Palm Beach County.

8. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) as this action arises under 29 U.S.C. § 207 and 215, the Fair Labor Standards Act ("FLSA").

9. Venue is appropriate in this district because: (1) a substantial part of the events or omissions giving rise to the claim occurred in the SDFL; and (2) one or more of the Defendants regularly conducts business in the SDFL.

## GENERAL ALLEGATIONS

10. Plaintiff, RICHARDSON, began working for FDI on October 29, 2019, and continues to work for FDI, as a bridge mechanic.

11. During the time from October 29, 2019, to present (the "Collective Action Time Period") RICHARDSON and those similarly situated employees, current and former, worked as bridge workers for FDI.

12. Plaintiff, GUZMAN was a bridge worker, working on electrical issues on the bridges, starting in May 2020, and continuing through today.

13. Plaintiff Eurich worked from November/December 2020 until May of 2021, as bridge worker, fixing electrical issues on bridges.

14. Plaintiff brings this action as a collective action against FDI, for unpaid overtime wages, owed to Plaintiff and all other similarly situated employees, current and former, of Defendants' who worked for the Defendants, at any time during the three-year period,

before the filing of this Complaint, through the present (the "FLSA Collective Members"). The FLSA Collective Members should be informed of the pendency of this action.

15. Plaintiff, EURICH, was terminated from his employment, after his phone was tracked to a lawyer's office, at which he was asking advice on his overtime rights and joining this action.

16. While working for FDI, the FLSA Collective Members were employees, as §209 U.S.C. 203(e) defines the term. The Collective Members, and named Plaintiffs, were W-2 employees working under the direct supervision of the Company, without the ability to set their own schedules, and were economically dependent on FDI. The Collective Members, due to their on-call schedule, while on call, did not have the ability to seek secondary employment, order a pizza, and know that they will be home to receive it, eat at a restaurant and know they will still be there when the food comes out, pick up frozen/refrigerated food at the store and know it could be taken home before spoiling. The collective Members, while on call, could not count on going to the laundromat and know that they would be there when the dry cycle was done, or go to a family event outside of a very limited geographic area, while on call, go on a boat, or to a movie and know they will see the whole movie.

17. FLSA Collective Members qualify under §203(e), as they were hourly non-exempt employees, maintaining instrumentalities of interstate commerce, and doing so by handling materials which traveled through interstate commerce, such as tools, oils, lubricants, trucks, cranes, bucket trucks, cell phones, and other implements of interstate commerce, which had to be handled (used) to complete bridge maintenance for FDI, OBEL and PORTER.

18. FDI is an enterprise with more than $500,000 in gross annual business transacted.

19. FDI is an enterprise engaged in interstate commerce, and an employer as defined by 29 U.S.C. §203(d) and (s)(1), in that it had employees handling materials used in interstate commerce, maintains instrumentalities of interstate commerce, and has more than $500,000 in annual gross business, hence its employees are subject to the FLSA, 29 U.S.C. §207.

20. During the Collective Action Period, Defendants failed to pay Plaintiffs, and the other FLSA Collective Members, for all overtime hours worked in violation of the FLSA. Specifically, the Collective Members, including the Named Plaintiffs, were unable to use their time off for their own purposes, as they were on call, regularly, and during these on-call times, they were not paid overtime for the time that they were on-call. Nor could they use this time for their own benefit, as they were restricted geographically, to an area in which they could quickly respond, to the bridges they were responsible for, at unknowable times, that they may have ended up malfunctioning. When on call Named Plaintiffs, and those similarly situated, never knew when they would have to be at a bridge within thirty minutes, keeping them tightly tied, geographically, to at least three bridges within Palm Beach Count.

21. Plaintiff, and other FLSA Collective Members, are non-exempt employees under the FLSA, in that their work was hourly, they fall under the jurisdiction of the DOL and not the DOT, and the work requires no advanced degree, or expertise from years of experience, even if some have years of experience.

22. As part of their regular business practices, Defendants have intentionally, willfully, and repetitively harmed Plaintiffs and other FLSA Collective Members by engaging in a

pattern, practice and policy of violating the FLSA on a class wide basis. The acts were willful and knowing, because FLSA Class Members, complained about the illegal pay practices of not paying for on-call time.

23. Although the Defendants required the Plaintiff, and other FLSA Collective Members, to be on call and engaged (meaning they could not use the time for themselves that they were on call), twenty-four hours per-day, for different numbers of days depending on the Plaintiff, Defendants failed to pay overtime for this on call time.

24. The FLSA Collective Members all performed similar work to Plaintiffs', bridge maintenance, for similar compensation. Plaintiffs, and other FLSA Collective Members, all worked in non-exempt positions, specifically as bridge workers, and were subject to the same violations of the FLSA, regarding on call time.

25. The on-call time meant that the Plaintiff, and the FLSA Collective Members, all worked more than 40 hours per week, without overtime compensation. Plaintiff, and other FLSA Collective Members, were on duty actively working on bridges for 40 hours per week, but they were on call 24 hours per-day, five days per week, and, depending on the Plaintiff, every other, every third, or every weekend, without the ability to use the on-call time as they chose. Hence each class member, and Plaintiff, on duty for a week of work, and on call time during the weekend, was entitled to one-hundred-twenty-eight hours of unpaid overtime per-week. In a week in which Plaintiffs, or a class member was not on call during the weekend, he/she is entitled to seventy-two hours of overtime, per-week.

26. The on-call time was compensable because it involved hefty restrictions on the Plaintiffs' time, and that of those similarly situated, including severe geographic restrictions on where they could travel. While some were only on call for three bridges, others were on call for

more than three bridges, more than thirty minutes from their homes, yet had to report to said bridges within thirty minutes of being called. Plaintiffs, and those similarly situated, could not venture outside of a half hour's distance from multiple locations, the fixed time limit for responses was too restrictive because it required Plaintiffs, and those similarly situated, to always be ready to instantaneously respond while on-call. Plaintiffs had an unduly restrictive amount of time to report to bridges, while on-call. Plaintiffs had only thirty minutes to respond, which severely limited what they could do on call, because they would have to report to a bridge for repairs, basically, the moment they were called, leaving no time to resolve a bill at a restaurant, or politely excuse themselves when guests are over, retain supplemental employment or seek professional advancement through educational opportunities.

27. The on-call time meant that the Plaintiffs, and FLSA Collective Members, worked more than 40 hours per week, in many weeks, without overtime compensation. Plaintiffs, and others similarly situated, were on call based on differing schedules, however, they were unable to use that overtime as they chose. For example, one cannot go to a movie over the weekend, if one is expected to have a thirty-minute response time to multiple bridges. Dating, is, clearly out of the question while on call, and so is participation in recreational team sports.

28. The FLSA Collective Members are similarly situated, to Plaintiff, as they all worked the unpaid on-call time in violation of the FLSA.

29. The FLSA Collective Members had similar job duties to Plaintiff, and each other.

30. The specific job titles or precise job responsibilities of the other FLSA Collective Members does not prevent collective treatment.

31. Plaintiff and other FLSA Collective Members are entitled to overtime compensation for their on-call time, which was uncompensated by the Defendants.

32. Although, the exact amount of damages may vary among the FLSA Collective Members, the damages can be easily calculated by formula. The claims of the FLSA Collective Members all arise from a common nucleus of operative facts. Liability is based on a systematic course of wrongful conduct that caused harm to all the FLSA Collective Members.

33. The Defendants instituted, permitted, and/or required policies and practices that resulted in Plaintiffs, and other FLSA Collective Members, being deprived of wages they were owed pursuant to the FLSA, including but not limited to overtime pay for all hours worked in excess of forty (40) per-workweek.

## **CONDITIONS PRECEDENT, ATTORNEYS' FEES AND COSTS**

34. The Plaintiffs have retained Lubell Rosen, LLC., to represent them in this action and are obligated to pay reasonable attorney's fees and costs for services rendered.

35. All Conditions precedent to this action have occurred, been satisfied, or waived.

## **COUNT I- VIOLATION OF THE FLSA AGAINST ALL DEFENDANTS**

36. Plaintiffs, individually, collectively and on behalf of all of those similarly situated, realleges the allegations contained in Paragraphs 1 through 33 above as if fully set forth herein.

37. Defendant OBEL was Plaintiffs RICHARDSON'S, EURICH'S and GUZMAN'S direct supervisor and created the on-call scheduling, which is the FLSA violation at issue. Because OBEL authored the policy, which is violative of the FLSA, he acted as an

employer and source of the FLSA violation. Hence, OBEL employed Plaintiff, and FLSA Collective Members.

38. Defendant PORTER was Defendant OBEL's supervisor and in control of the company, hence, could have corrected the violative policies at issue, and was informed by employees leaving the company, that the violative policy was the reason they were leaving. Hence, Defendant, Porter, is an employer, as she had the ultimate power to alter the violative policy, was aware of same, and did not act to alter same, despite the ultimate authority to. Hence, PORTER was an employer of Plaintiff and FLSA Collective Members.

39. Defendants PORTER and OBEL, ran the day-to-day operations of the company affecting the Plaintiffs, and FLSA Collective Members, also making them Employers of Plaintiffs and the FLSA Collective Members.

40. This is an action against all three Defendants for willful violations of the FLSA, including 29 U.S.C. §§206, 207 et. seq. The actions are willful, because the Defendants formed a policy of on-call time, without thoroughly investigating its legality, even after employees questioned same.

41. From November 1, 2019, to present Plaintiff, RICHARDSON, worked for the three Defendants continuously in excess of forty-hours per-week, specifically by working 128 hours per-week of unpaid on-call overtime. Plaintiff, RICHARDSON was not supposed to be on call every weekend, however, Plaintiff Richardson ended up on call most weekends, because he was a very capable worker.

42. Plaintiff, EURICH, worked every third weekend on-call, for all bridges in Palm Beach County. Plaintiff EUIRCH was on call twenty-four hours a day during the week, for the bridges assigned to him.

43. Plaintiff, GUZMAN, was on all one weekend per-month, but was also on call twenty-four hours per-day, during the week, for the bridges assigned to him.

44. During the entire length of the Plaintiffs' employment with Defendants, Plaintiffs were not paid for all overtime owed for hours worked in excess of forty per-week, which Plaintiffs worked, in violation of the FLSA.

45. The FLSA Collective Members worked at various times for the Defendants, during the Collective Action Period.

46. During the FLSA Collective Members' employment for FDI, the FLSA Collective Members were not paid for all hours worked in excess of 40 per-week, specifically as it pertains to on-call time, in violation of the FLSA's overtime requirement.

47. Defendants' actions were willful and purposeful, as they were well aware of the FLSA's requirement to pay overtime and for all hours worked, to non-exempt employees such as Plaintiffs, and FLSA Collective Members.

48. None of the exemptions provided by the FLSA regulating the duty of employers to pay employees at a time-and-a-half rate for all hours worked in excess of forty (40) in a given workweek are applicable to Defendants or Plaintiffs and the other FLSA Collective Members.

## **PRAYER FOR RELIEF**

Plaintiff and FLSA Collective Members, Pursuant to 29 U.S.C. § 216(b), pray this Court allow recovery from Defendants of:

    (a) All unpaid overtime which is due;

    (b) Compensation at time and a half, for all hours worked for which they were not compensated;

      (c) An amount equal to the unpaid overtime owed as liquidated damages;

      (d) The costs of this action; and

      (e) Reasonable attorney's fees.

## COUNT II- RETALIATION AGAINST ALL DEFENDANTS, FOR THE RETALIATORY TERMINATION OF ADAM EURICH

49. Plaintiff, EURICH, individually, realleges the allegations contained in Paragraphs 1 through 33 above as if fully set forth herein.

50. Plaintiff, EURICH, was an employee of all three Defendants, at the time when he went to an attorneys' office (not undersigned counsel's) to learn about his overtime rights.

51. This visit occurred after the filing of the original Complaint in this action.

52. Going to an attorneys' office to discuss overtime rights, whether meeting with an attorney, or an assistant, is a protected activity.

53. Plaintiff, EURICH's, phone was tracked to the attorneys' office, as his phone is a company phone, with GPS tracking.

54. Plaintiff, EURICH, was fired for a pretextual reason, the day after he sought advice as to his FLSA rights.

55. Hence, the day after Plaintiff, EURICH, engaged in a protected activity he was subject to termination, an adverse employment action.

56. The temporal proximity evidences the link between the protected activity and the retaliatory behavior/adverse employment action.

57. When fired, Defendant, OBEL, told Plaintiff, Eurich, "you are not the first and won't be the last." Discouraging any other employee from exploring their rights under the FLSA.

## PRAYER FOR RELIEF

Plaintiff, pray this Court allow recovery from Defendants of:

(a) Lost wages;

(b) Front pay;

(c) Emotional damages;

(d) Lost benefits;

(e) Liquidated damages;

(f) Costs of bringing this action; &

(g) Reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiff, and the FLSA Collective Members, demand a jury trial on all issues so triable.

Respectfully Submitted, this 5th Day of August 2021

                                      LUBELL & ROSEN, LLC
                                      200 S. Andrews Ave, Suite 900
                                      Fort Lauderdale, Florida 33301
                                      Phone: (954) 880-9500
                                      Fax: (954) 755-2993
                                      E-mail:     jhs@lubellrosen.com

                                      By: *s/Joshua H. Sheskin*
                                          Joshua H. Sheskin, Esquire
                                          Florida Bar No. 93028