# EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

       Plaintiff,

v.

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

       Defendants.

_____/

Case No. 9:21-cv-80844-WM

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

       Plaintiffs,

v.

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

       Defendants.

_____/

Case No. 9:21-cv-80803-WM

**PLAINTIFF, ANTONIO RAMOS', RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

    1.    All credit and debit card statements showing purchases you made while you were on call.

**ANSWER: See RAMOS – 000001–000106.**

    2.    All receipts showing purchases you made while on call.

**ANSWER: None. All receipts showing purchases made while on call from when Mr. Ramos was working over a year ago are no longer in Mr. Ramos' possession. However, he used his debit card for just about everything, if not everything, and those records have been turned over. See RAMOS – 000001–000106.**

1

3.      All telephone records showing telephone calls made or received by you while you were on call.

**ANSWER: None. All communication made while on call was with the company phone, which is no longer in Mr. Ramos' possession after the termination of his employment.**

4.      All text messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome. Plaintiff will incur significant time and expense in reviewing each and every text message sent or read during a one-year span, such as to outweigh any probative value. In other words, it is unlikely that Mr. Ramos has anything probative to the defense in his text messages which are not already accounted for in his bank statements, and the defense is looking to how Mr. Ramos used the time he was on call, and certainly the bank records show same.**

**Objection: Third parties have a reasonable expectation of privacy over their private communications with the Plaintiff. This expectation of privacy is the same as they would expect in not having their phone calls recorded. Because text message requests are not limited to those having to do with employment, OBJECTION, this request is not limited in scope, will generate mostly irrelevant information, and is designed to harass the Plaintiff by making his communications public.**

5.      All e-mails sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that Plaintiff will incur significant time and expense in reviewing each and every e-mail sent or read during a one-year span, to determine if it was made while on-call. In contrast the probative value of this request is not clearly established. An email can be written at one time, or parts on several occasions, and then emailed later, any one who has had to apologize to a significant other has been through the process of multiple drafts and sittings, to come up with the perfect apology. Further, when the email was read is a difficult thing to establish because most programs do not track this information, and, therefore, it would take an exorbinant effort on behalf of the Plaintiff, to search the meta data of Plaintiffs email account.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff emails.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to emails that will be relevant, such as emails about employment. It just asks Plaintiff to break the privacy third parties had when they emailed, which will not be a positive social move.**

2

6.      All other electronic messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, as it would require Plaintiff to expend disproportionate time and cost in reviewing each and every electronic message sent or read during a one-year span, and determine whether it was made on call. The probative value is minimal because an electronic communication can be trivial and take de minimis time, such as sending a happy face emoji.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff electronic messages.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to electronic communications that will be relevant, such as communications about employment. It just asks Plaintiff to break the privacy third parties had when they messaged, which will not be a positive social move.**

7.      All pictures taken by you while you were on call.

**ANSWER: None.**

8.      All screenshots taken by you while you were on call.

**ANSWER: None. All screenshots that would have been made while on call would have been with the company phone, which is no longer in Mr. Ramos' possession.**

9.      All pictures of you taken while you were on call.

**ANSWER: None.**

10.     All videos taken by you while you were on call.

**ANSWER: None.**

11.     All videos taken of you while you were on call.

**ANSWER: None.**

12.     All internet history(ies) showing websites you visited while on call.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, and does not represent when the internet was used by Mr. Ramos while on call.**

**Additionally, Objection, there is Mr. Ramos' girlfriend in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**Objection, because the internet is shared with Mr. Ramos' girlfriend, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Ramos, or his girlfriend left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

13.     All movie or television histories showing movies or television programs you watched while on call, including but not limited to histories from Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this request is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Ramos was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Ramos' Girlfriend's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Antonio Ramos specifically, just the Ramos household.**

14.     All social media posts, comments, likes, and similar activity made by you while you were on call. The term "social media" includes, but is not limited to, Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit.

**ANSWER: None. Mr. Ramos did not access his social media while on call.**

15.     All social media posts, comments, likes, and similar activity that refer to Defendant or your employment with Defendant.

**ANSWER: OBJECTION, this request for production is irrelevant to the issues of this case. Mr. Ramos' social media posts, comments, likes, and similar activities that refer to Defendant will not lead the admissibility of discoverable evidence, as Mr. Ramos' thoughts and impressions on Defendant have no bearing on whether Mr. Ramos' time primarily benefitted the employer or employee.**

16.     All event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: None. Mr. Ramos did not attend any such events while on call.**

17.     All tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: None. Mr. Ramos did not enter any such locations while on call.**

18.     All transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER: None. Mr. Ramos did not enter use any such transportation while on call.**

19.     All credit and debit card statements showing purchases of event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

20.     All credit and debit card statements showing purchases of tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

21.     All credit and debit card statements showing purchases of transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER**: **Objection, this request is duplicative of part of request number 1.**

22.     All ridesharing records reflecting rides you took while on call, including but not limited to rides taken on Uber and Lyft.

**ANSWER: None. Mr. Ramos did not use any ridesharing while on call.**

23.     All billing statements, including but not limited to toll billing statements, physician billing statements, and dentist billing statements that reflect your activities while you were on call.

**ANSWER: None. Mr. Ramos has no billing statements in his possession.**

24.     All text messages, e-mails, or other electronic messages referencing your activities while you were on call.

**ANSWER: None.**

25.     All text messages, e-mails, or other electronic messages asking you to perform work while on call.

**ANSWER: None. All correspondence with the Defendant were made using the company phone, which Mr. Ramos no longer has possession of.**

26.     All text messages, e-mails, or other electronic messages in which you respond to a request to perform work while on call.

**ANSWER: None. All correspondence made with the Defendant relating to responses to being asked to be on call were made with the company phone, which is no longer in Mr. Ramos' possession.**

27.     All text messages, e-mails, or other electronic messages in which you asked not to be on call, and all responses to such messages.

**ANSWER: None. All correspondence made with the Defendant relating to being asked to not be on call were made with the company phone, which is no longer in Mr. Ramos' possession.**

28.     All text messages, e-mails, or other electronic messages in which you stated that you were unable or unwilling to respond to a request to perform work while you were on call, and all responses to such messages.

**ANSWER: None. All correspondence made with the Defendant relating to being on-call were made with the company phone, which is no longer in Mr. Ramos' possession.**

29.     All calendar entries referencing your activities while on call.

**ANSWER: None. All calendar entries relating to being on-call were made on the company phone, which is no longer in Mr. Ramos' possession.**

30.     All credit and debit card statements showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: See RAMOS – 000001–000106.**

31.     All receipts showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: None. All receipts showing purchases made while on call from when Mr. Ramos was working over a year ago are no longer in Mr. Ramos' possession.**

32.     All paycheck stubs reflecting any wages earned by you while employed with Defendant.

**ANSWER: Objection, these documents were submitted by Defendants to Plaintiffs. Thus this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, this request for production improperly shifts that legal burden. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).**

33.     All documents that you sent to, or received from, any government agency in relation to any allegation that is contained in the Complaint.

**ANSWER: None.**

34.     All statements, affidavits, diaries, notes or other documents from any potential witness or third-party, including Plaintiff, concerning the allegations in the Complaint concerning Defendant's alleged liability for unpaid overtime or minimum wages under the Fair Labor Standards Act or Florida law, including any alleged liability for a "willful" violation of the law and liquidated damages.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceed the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off of the ground, and responding to discovery. None of these notes are remotely discoverable.**

35.     All documents reflecting any complaints you made to any employee or agent of Defendant concerning your wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) you received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to other employees relating to Mr. Ramos' employment were done verbally.**

36.     All documents reflecting any complaints made by any other employee of Defendant to any agent or employee of Defendant concerning wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to the Defendant relating to Mr. Ramos' employment were done verbally or via the company phone, which Mr. Ramos no longer has possession of.**

37.     All statements, affidavits, interview notes, meeting notes, audio or video tape recordings, and handwritten or typewritten notes received from or taken from any person (including any former or current employees of Defendant) taken in connection with this action.

**ANSWER: OBJECTION, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceeds the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

38.     Any release, settlement agreement, or severance agreement which limits, reduces, or extinguishes the actual and/or potential liability of any party to this matter.

**ANSWER: See RAMOS – 000107–000109.**

39.     All documents given to you by Defendant or taken from Defendant by you.

**ANSWER: See RAMOS - 000110–000135.**

40.     Any reports or documents prepared by any expert whom you expect to call as a witness in this case or whom you have consulted with in connection with this case.

**ANSWER: Objection, there is a proper time for expert witness discovery as outlined in the Federal Rules, and the Scheduling Order, this is not that time.**

41.     All documents, other than attorney-client communications, reflecting that Adam Eurich went to an attorney as alleged in Paragraph 50 of the *Richardson* Complaint.

**ANSWER: None.**

42.     All documents showing that Defendant knew Adam Eurich went to an attorney's office as alleged in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: None in Mr. Ramos' possession.**

43.     The "company phone" referenced in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: None.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

       Plaintiff,

v.

                                      Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

       Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

       Plaintiffs,

v.

                                        Case No. 9:21-cv-80803-WM

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

       Defendants.

_____/

## PLAINTIFF, ROBERT RICHARDSON's, RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

1.     All credit and debit card statements showing purchases you made while you were on call.

**ANSWER: See Plaintiffs' – 000194–000303.**

2.     All receipts showing purchases you made while on call.

**ANSWER: None. All receipts showing purchases made while on call from when Mr. Richardson was working on-call are no longer in Mr. Richardson's possession.**

3.      All telephone records showing telephone calls made or received by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that the probative value is, clearly, outweighed by the buden it imposes on Plaintiff. Plaintiff will incur significant time and cost in reviewing each and every telephone call, to determine if made while on-call. There is no probative value to this inquiry because telephones are portable and, therefore, Plaintiff could be on the phone while on the way to a bridge, or while awaiting instructions on completion of the bridge repair. The fact that the Plaintiff answered a phone call during the time he was on call, is not a factor courts commonly consider in the on-call time analysis. This is logical because phone calls can be taken while one works, or in one's living room and then in one's truck on the way to a broken bridge. Therefore, Objection, this request is not relevant to the central question of the case, as to whether the time on call was spent predominantly for the benefit of the employer or not.**

**Objection: Third Parties have a reasonable expectation of privacy over whom they call, including Plaintiff.**

**Objection: Telephones do not show where someone is or what they are doing. We often take calls in all sorts of places, for all sorts of reasons, on the job, and off the job. Defendant did not have a no call policy for on-call time, hence the request is not relevant because it does nothing to show how the time on call was used, past having had one ear to the phone. The ability to do other things while we talk on our cell phones is common. Whether time was spent on the phone, is not a relevant inquiry to the proceedings.**

4.      All text messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome. Plaintiff will incur significant time and expense in reviewing each and every text message sent or read during a two-year span, such as to outweigh any probative value. In other words, it is unlikely that Mr. Richardson has anything probative to the defense in his text messages which are not already accounted for in his bank statements, and the defense is looking to how Mr. Richardson used the time he was on call, and certainly the bank records show same.**

**Objection: Third parties have a reasonable expectation of privacy over their private communications with the Plaintiff. This expectation of privacy is the same as they would expect in not having their phone calls recorded. Because text message requests are not limited to those having to do with employment.**

**Objection, this request is not limited in scope, will generate mostly irrelevant information, and is designed to harass the Plaintiff by making his communications public.**

2

5.      All e-mails sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that Plaintiff will incur significant time and expense in reviewing each and every e-mail sent or read during a two-year span, to determine if it was made while on-call. In contrast, the probative value of this request is not clearly established. An email can be written at one time, or parts on several occasions, and then emailed later, any one who has had to apologize to a significant other has been through the process of multiple drafts and sittings, to come up with the perfect apology. Further, when the email was read is a difficult thing to establish because most programs do not track this information, and, therefore, it would take an exorbinant effort on behalf of the Plaintiff, to search the meta data of Plaintiffs email account.**

**OBJECTION this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff emails.**

**OBJECTION this request is designed to harass and annoy Plaintiff, as it is not limited in scope to emails that will be relevant, such as emails about employment. It just asks Plaintiff to break the privacy third parties had when they emailed, which will not be a positive social move.**

6.      All other electronic messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, as it would require Plaintiff to expend disproportionate time and cost in reviewing each and every electronic message sent or read during a two-year span, and determine whether it was made on call. The probative value is minimal because an electronic communication can be trivial and take de minimis time, such as sending a happy face emoji.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff electronic messages.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to electronic communications that will be relevant, such as communications about employment. It just asks Plaintiff to break the privacy third parties had when they messaged, which will not be a positive social move.**

7.      All pictures taken by you while you were on call.

**ANSWER: See Plaintiffs' – 000368–000399.**

8.      All screenshots taken by you while you were on call.

**ANSWER: None.**

9.      All pictures of you taken while you were on call.

**ANSWER: See Plaintiffs' – 000033.**

10.     All videos taken by you while you were on call.

**ANSWER: None.**

11.     All videos taken of you while you were on call.

**ANSWER: None.**

12.     All internet history(ies) showing websites you visited while on call.

**ANSWER: Objection, this request for production is irrelevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, and does not represent when the internet was used by Mr. Richardson while on call.**

**Additionally, Objection, there is Mr. Richardson's girlfriend in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**OBJECTION, because the internet is shared with Mr. Richardson's girlfriend, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**OBJECTION, if Mr. Richardson, or his girlfriend left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

13.     All movie or television histories showing movies or television programs you watched while on call, including but not limited to histories from Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this request is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Richardson was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Richardson's Girlfriend's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Robert Richardson specifically, just the Richardson household.**

14.     All social media posts, comments, likes, and similar activity made by you while you were on call. The term "social media" includes, but is not limited to, Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit.

**ANSWER: None. Mr. Richardson did not access his social media while on call.**

15.     All social media posts, comments, likes, and similar activity that refer to Defendant or your employment with Defendant.

**ANSWER: Objection, this request for production is irrelevant to the issues of this case. Mr. Richardson's social media posts, comments, likes, and similar activities that refer to Defendant will not lead to the admission of discoverable evidence, as Mr. Richardson's thoughts and impressions of Defendant have no bearing on whether Mr. Richardson's time primarily benefitted the employer or employee.**

16.     All event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: None. Mr. Richardson did not attend any such events while on call.**

17.     All tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: None. Mr. Richardson did not enter any such locations while on call.**

18.     All transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER: None. Mr. Richardson did not use any such transportation while on call.**

19.     All credit and debit card statements showing purchases of event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

20.     All credit and debit card statements showing purchases of tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

21.     All credit and debit card statements showing purchases of transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER**: **Objection, this request is duplicative of part of request number 1.**

22.     All ridesharing records reflecting rides you took while on call, including but not limited to rides taken on Uber and Lyft.

**ANSWER: None. Mr. Richardson did not use any ridesharing while on call.**

23.     All billing statements, including but not limited to toll billing statements, physician billing statements, and dentist billing statements that reflect your activities while you were on call.

**ANSWER: None. Mr. Richardson has no billing statements in his possession.**

24.     All text messages, e-mails, or other electronic messages referencing your activities while you were on call.

**ANSWER: See Plaintiffs' – 000001–000035; 000080–000091.**

25.     All text messages, e-mails, or other electronic messages asking you to perform work while on call.

**ANSWER: See Plaintiffs' – 000089–000092. Other correspondence made with the Defendant relating to being asked to be on-call were made verbally.**

26.     All text messages, e-mails, or other electronic messages in which you respond to a request to perform work while on call.

**ANSWER: See Plaintiffs' 000091. Other correspondence made with the Defendant relating to responses to being asked to be on-call were made verbally.**

27.     All text messages, e-mails, or other electronic messages in which you asked not to be on call, and all responses to such messages.

**ANSWER: None. All correspondence made with the Defendant relating to being asked to not be on call were made verbally.**

28.     All text messages, e-mails, or other electronic messages in which you stated that you were unable or unwilling to respond to a request to perform work while you were on call, and all responses to such messages.

**ANSWER: None.**

29.     All calendar entries referencing your activities while on call.

**ANSWER: None.**

30.     All credit and debit card statements showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: See Plaintiffs' – 000194–000303.**

31.    All receipts showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: None.**

32.    All paycheck stubs reflecting any wages earned by you while employed with Defendant.

**ANSWER: Objection, these documents were submitted by Defendants to Plaintiffs. Thus this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, this request for production improperly shifts that legal burden.** *See Anderson v. Mt. Clemens Pottery Co.*, **328 U.S. 680 (1946).**

33.    All documents that you sent to, or received from, any government agency in relation to any allegation that is contained in the Complaint.

**ANSWER: None.**

34.    All statements, affidavits, diaries, notes or other documents from any potential witness or third-party, including Plaintiff, concerning the allegations in the Complaint concerning Defendant's alleged liability for unpaid overtime or minimum wages under the Fair Labor Standards Act or Florida law, including any alleged liability for a "willful" violation of the law and liquidated damages.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceed the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

35.    All documents reflecting any complaints you made to any employee or agent of Defendant concerning your wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) you received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to other employees relating to Mr. Richardson's employment were made verbally.**

36.    All documents reflecting any complaints made by any other employee of Defendant to any agent or employee of Defendant concerning wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to the Defendant relating to Mr. Richardson's employment were made verbally.**

37.     All statements, affidavits, interview notes, meeting notes, audio or video tape recordings, and handwritten or typewritten notes received from or taken from any person (including any former or current employees of Defendant) taken in connection with this action.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceeds the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

38.     Any release, settlement agreement, or severance agreement which limits, reduces, or extinguishes the actual and/or potential liability of any party to this matter.

**ANSWER: None.**

39.     All documents given to you by Defendant or taken from Defendant by you.

**ANSWER: See Plaintiffs' – 000001– 000088.**

40.     Any reports or documents prepared by any expert whom you expect to call as a witness in this case or whom you have consulted with in connection with this case.

**ANSWER: Objection, there is a proper time for expert witness discovery as outlined in the Federal Rules, and the Scheduling Order, this is not that time.**

41.     All documents, other than attorney-client communications, reflecting that Adam Eurich went to an attorney as alleged in Paragraph 50 of the *Richardson* Complaint.

**ANSWER: None.**

42.     All documents showing that Defendant knew Adam Eurich went to an attorney's office as alleged in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: None.**

43.     The "company phone" referenced in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: The phone was stolen and reported so by Mr. Richardson.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

        Plaintiff,

v.
                            Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

        Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

        Plaintiffs,

v.
                            Case No. 9:21-cv-80803-WM

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

        Defendants.

_____/

## PLAINTIFF, JUAN GUZMAN's, RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

1.    All credit and debit card statements showing purchases you made while you were on call.

**ANSWER: See Plaintiffs' - 000304–000367.**

2.    All receipts showing purchases you made while on call.

**ANSWER: None. All receipts showing purchases made while on call from when Mr. Guzman was working on-call are no longer in Mr. Guzman's possession.**

1

3.      All telephone records showing telephone calls made or received by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that the probative value is, clearly, outweighed by the buden it imposes on Plaintiff. Plaintiff will incur significant time and cost in reviewing each and every telephone call, to determine if made while on-call. There is no probative value to this inquiry because telephones are portable and, therefore, Plaintiff could be on the phone while on the way to a bridge, or while awaiting instructions on completion of the bridge repair. The fact that the Plaintiff answered a phone call during the time he was on call, is not a factor courts commonly consider in the on-call time analysis. This is logical because phone calls can be taken while one works, or in one's living room and then in one's truck on the way to a broken bridge. Therefore, Objection, this request is not relevant to the central question of the case, as to whether the time on call was spent predominantly for the benefit of the employer or not.**

**Objection: Third Parties have a reasonable expectation of privacy over whom they call, including Plaintiff.**

**Objection: Telephones do not show where someone is or what they are doing. We often take calls in all sorts of places, for all sorts of reasons, on the job, and off the job. Defendant did not have a no call policy for on-call time, hence the request is not relevant because it does nothing to show how the time on call was used, past having had one ear to the phone. The ability to do other things while we talk on our cell phones is common. Whether time was spent on the phone, is not a relevant inquiry to the proceedings.**

4.      All text messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome. Plaintiff will incur significant time and expense in reviewing each and every text message sent or read during a one-year span, such as to outweigh any probative value. In other words, it is unlikely that Mr. Guzman has anything probative to the defense in his text messages which are not already accounted for in his bank statements, and the defense is looking to how Mr. Guzman used the time he was on call, and certainly the bank records show same.**

**Objection: Third parties have a reasonable expectation of privacy over their private communications with the Plaintiff. This expectation of privacy is the same as they would expect in not having their phone calls recorded. Because text message requests are not limited to those having to do with employment.**

**Objection, this request is not limited in scope, will generate mostly irrelevant information, and is designed to harass the Plaintiff by making his communications public.**

5.      All e-mails sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that Plaintiff will incur significant time and expense in reviewing each and every e-mail sent or read during a one-year span, to determine if it was made while on-call. In contrast, the probative value of this request is not clearly established. An email can be written at one time, or parts on several occasions, and then emailed later, any one who has had to apologize to a significant other has been through the process of multiple drafts and sittings, to come up with the perfect apology. Further, when the email was read is a difficult thing to establish because most programs do not track this information, and, therefore, it would take an exorbinant effort on behalf of the Plaintiff, to search the meta data of Plaintiffs email account.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff emails.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to emails that will be relevant, such as emails about employment. It just asks Plaintiff to break the privacy third parties had when they emailed, which will not be a positive social move.**

6.      All other electronic messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, as it would require Plaintiff to expend disproportionate time and cost in reviewing each and every electronic message sent or read during a one-year span, and determine whether it was made on call. The probative value is minimal because an electronic communication can be trivial and take de minimis time, such as sending a happy face emoji.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff electronic messages.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to electronic communications that will be relevant, such as communications about employment. It just asks Plaintiff to break the privacy third parties had when they messaged, which will not be a positive social move.**

7.      All pictures taken by you while you were on call.

**ANSWER: See Plaintiffs' – 000400.**

8.      All screenshots taken by you while you were on call.

**ANSWER: None.**

9.      All pictures of you taken while you were on call.

**ANSWER: None.**

10.      All videos taken by you while you were on call.

**ANSWER: See DropBox Link.**

11.      All videos taken of you while you were on call.

**ANSWER: None.**

12.      All internet history(ies) showing websites you visited while on call.

**ANSWER: Objection, this request for production is irrelevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, and does not represent when the internet was used by Mr. Guzman while on call.**

**Additionally, Objection, there is Mr. Guzman's wife in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**Objection, because the internet is shared with Mr. Guzman's wife, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Guzman, or his wife left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

13.      All movie or television histories showing movies or television programs you watched while on call, including but not limited to histories from Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this request is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Guzman was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Guzman's wife's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Juan Guzman specifically, just the Guzman household.**

14.     All social media posts, comments, likes, and similar activity made by you while you were on call. The term "social media" includes, but is not limited to, Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit.

**ANSWER: None.**

15.     All social media posts, comments, likes, and similar activity that refer to Defendant or your employment with Defendant.

**ANSWER: Objection, this request for production is irrelevant to the issues of this case. Mr. Guzman's social media posts, comments, likes, and similar activities that refer to Defendant will not lead to the admission of discoverable evidence, as Mr. Guzman's thoughts and impressions of Defendant have no bearing on whether Mr. Guzman's time primarily benefitted the employer or employee.**

16.     All event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: None. Mr. Guzman did not attend any such events while on call.**

17.     All tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: None. Mr. Guzman did not enter any such locations while on call.**

18.     All transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER: None. Mr. Guzman did not use any such transportation while on call.**

19.     All credit and debit card statements showing purchases of event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

20.     All credit and debit card statements showing purchases of tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

21.     All credit and debit card statements showing purchases of transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER**: **Objection, this request is duplicative of part of request number 1.**

22.     All ridesharing records reflecting rides you took while on call, including but not limited to rides taken on Uber and Lyft.

**ANSWER: None. Mr. Guzman did not use any ridesharing while on call.**

23.     All billing statements, including but not limited to toll billing statements, physician billing statements, and dentist billing statements that reflect your activities while you were on call.

**ANSWER: None. Mr. Guzman has no billing statements in his possession.**

24.     All text messages, e-mails, or other electronic messages referencing your activities while you were on call.

**ANSWER: See Plaintiffs' – 000112–000148.**

25.     All text messages, e-mails, or other electronic messages asking you to perform work while on call.

**ANSWER: None. All correspondence made with the Defendant relating to being asked to be on-call were made verbally.**

26.     All text messages, e-mails, or other electronic messages in which you respond to a request to perform work while on call.

**ANSWER: None. All correspondence made with the Defendant relating to responses to being asked to be on-call were made verbally.**

27.     All text messages, e-mails, or other electronic messages in which you asked not to be on call, and all responses to such messages.

**ANSWER: None. All correspondence made with the Defendant relating to being asked to not be on-call were made verbally.**

28.     All text messages, e-mails, or other electronic messages in which you stated that you were unable or unwilling to respond to a request to perform work while you were on call, and all responses to such messages.

**ANSWER: None.**

29.     All calendar entries referencing your activities while on call.

**ANSWER: None.**

30.     All credit and debit card statements showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: See Plaintiffs' - 000304–000367.**

31.     All receipts showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: None.**

32.     All paycheck stubs reflecting any wages earned by you while employed with Defendant.

**ANSWER: Objection, these documents were submitted by Defendants to Plaintiffs. Thus this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, this request for production improperly shifts that legal burden.** *See Anderson v. Mt. Clemens Pottery Co.***, 328 U.S. 680 (1946).**

33.     All documents that you sent to, or received from, any government agency in relation to any allegation that is contained in the Complaint.

**ANSWER: None.**

34.     All statements, affidavits, diaries, notes or other documents from any potential witness or third-party, including Plaintiff, concerning the allegations in the Complaint concerning Defendant's alleged liability for unpaid overtime or minimum wages under the Fair Labor Standards Act or Florida law, including any alleged liability for a "willful" violation of the law and liquidated damages.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceed the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

35.     All documents reflecting any complaints you made to any employee or agent of Defendant concerning your wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) you received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to other employees relating to Mr. Guzman's employment were made verbally.**

36.     All documents reflecting any complaints made by any other employee of Defendant to any agent or employee of Defendant concerning wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to the Defendant relating to Mr. Guzman's employment were made verbally.**

37.     All statements, affidavits, interview notes, meeting notes, audio or video tape recordings, and handwritten or typewritten notes received from or taken from any person (including any former or current employees of Defendant) taken in connection with this action.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceed the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

38.     Any release, settlement agreement, or severance agreement which limits, reduces, or extinguishes the actual and/or potential liability of any party to this matter.

**ANSWER: None.**

39.     All documents given to you by Defendant or taken from Defendant by you.

**ANSWER: See Plaintiffs' – 000114–000148.**

40.     Any reports or documents prepared by any expert whom you expect to call as a witness in this case or whom you have consulted with in connection with this case.

**ANSWER: Objection, there is a proper time for expert witness discovery as outlined in the Federal Rules, and the Scheduling Order, this is not that time.**

41.     All documents, other than attorney-client communications, reflecting that Adam Eurich went to an attorney as alleged in Paragraph 50 of the *Richardson* Complaint.

**ANSWER: None.**

42.     All documents showing that Defendant knew Adam Eurich went to an attorney's office as alleged in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: None.**

43.     The "company phone" referenced in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: The phone was stolen and reported so by Mr. Richardson.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

          Plaintiff,

v.

                                        Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

          Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

          Plaintiffs,

v.

                                        Case No. 9:21-cv-80803-WM

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

          Defendants.

_____/

## PLAINTIFF, ADAM EURICH's, RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

1.    All credit and debit card statements showing purchases you made while you were on call.

**ANSWER: None. Adam Eurich does not have a debit or credit card.**

2.    All receipts showing purchases you made while on call.

**ANSWER: None. All receipts showing purchases made while on call from when Mr. Eurich was working on-call are no longer in Mr. Eurich's possession.**

1

3.      All telephone records showing telephone calls made or received by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that the probative value is, clearly, outweighed by the buden it imposes on Plaintiff. Plaintiff will incur significant time and cost in reviewing each and every telephone call, to determine if made while on-call. There is no probative value to this inquiry because telephones are portable and, therefore, Plaintiff could be on the phone while on the way to a bridge, or while awaiting instructions on completion of the bridge repair. The fact that the Plaintiff answered a phone call during the time he was on call, is not a factor courts commonly consider in the on-call time analysis. This is logical because phone calls can be taken while one works, or in one's living room and then in one's truck on the way to a broken bridge. Therefore, Objection, this request is not relevant to the central question of the case, as to whether the time on call was spent predominantly for the benefit of the employer or not.**

**Objection: Third Parties have a reasonable expectation of privacy over whom they call, including Plaintiff.**

**Objection: Telephones do not show where someone is or what they are doing. We often take calls in all sorts of places, for all sorts of reasons, on the job, and off the job. Defendant did not have a no call policy for on-call time, hence the request is not relevant because it does nothing to show how the time on call was used, past having had one ear to the phone. The ability to do other things while we talk on our cell phones is common. Whether time was spent on the phone, is not a relevant inquiry to the proceedings.**

4.      All text messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome. Plaintiff will incur significant time and expense in reviewing each and every text message sent or read during a one-year span, such as to outweigh any probative value. In other words, it is unlikely that Mr. Eurich has anything probative to the defense in his text messages which are not already accounted for in his bank statements, and the defense is looking to how Mr. Eurich used the time he was on call, and certainly the bank records show same.**

**Objection: Third parties have a reasonable expectation of privacy over their private communications with the Plaintiff. This expectation of privacy is the same as they would expect in not having their phone calls recorded. Because text message requests are not limited to those having to do with employment.**

**Objection, this request is not limited in scope, will generate mostly irrelevant information, and is designed to harass the Plaintiff by making his communications public.**

5.      All e-mails sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, in that Plaintiff will incur significant time and expense in reviewing each and every e-mail sent or read during a one-year span, to determine if it was made while on-call. In contrast, the probative value of this request is not clearly established. An email can be written at one time, or parts on several occasions, and then emailed later, any one who has had to apologize to a significant other has been through the process of multiple drafts and sittings, to come up with the perfect apology. Further, when the email was read is a difficult thing to establish because most programs do not track this information, and, therefore, it would take an exorbinant effort on behalf of the Plaintiff, to search the meta data of Plaintiffs email account.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff emails.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to emails that will be relevant, such as emails about employment. It just asks Plaintiff to break the privacy third parties had when they emailed, which will not be a positive social move.**

6.      All other electronic messages sent or read by you while you were on call.

**ANSWER: Objection, this request is unduly duly burdensome, as it would require Plaintiff to expend disproportionate time and cost in reviewing each and every electronic message sent or read during a one-year span, and determine whether it was made on call. The probative value is minimal because an electronic communication can be trivial and take de minimis time, such as sending a happy face emoji.**

**Objection, this request is designed to violate the reasonable expectation of privacy among third parties sending Plaintiff electronic messages.**

**Objection, this request is designed to harass and annoy Plaintiff, as it is not limited in scope to electronic communications that will be relevant, such as communications about employment. It just asks Plaintiff to break the privacy third parties had when they messaged, which will not be a positive social move.**

7.      All pictures taken by you while you were on call.

**ANSWER: None.**

8.      All screenshots taken by you while you were on call.

**ANSWER: None.**

9.      All pictures of you taken while you were on call.

**ANSWER: None.**

10.     All videos taken by you while you were on call.

**ANSWER: None.**

11.     All videos taken of you while you were on call.

**ANSWER: None.**

12.     All internet history(ies) showing websites you visited while on call.

**ANSWER: Objection, this request for production is irrelevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, and does not represent when the internet was used by Mr. Eurich while on call.**

**Additionally, Objection, there is Mr. Eurich's wife in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**Objection, because the internet is shared with Mr. Eurich's wife, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Eurich, or his wife left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

13.     All movie or television histories showing movies or television programs you watched while on call, including but not limited to histories from Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this request is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Eurich was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Eurich's wife's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Adam Eurich specifically, just the Eurich household.**

14.     All social media posts, comments, likes, and similar activity made by you while you were on call. The term "social media" includes, but is not limited to, Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit.

**ANSWER: None. Mr. Eurich does not have social media.**

15.     All social media posts, comments, likes, and similar activity that refer to Defendant or your employment with Defendant.

**ANSWER: None. Mr. Eurich does not have social media.**

16.     All event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: None. Mr. Eurich did not attend any such events while on call.**

17.     All tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: None. Mr. Eurich did not enter any such locations while on call.**

18.     All transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER: None. Mr. Eurich did not use any such transportation while on call.**

19.     All credit and debit card statements showing purchases of event tickets, including but not limited to concert tickets, movie tickets, theater tickets, and tickets to sporting events, for events you attended while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

20.     All credit and debit card statements showing purchases of tickets to enter particular locations, including but not limited to tickets to enter theme parks or state parks, that you used while on call.

**ANSWER: Objection, this request is duplicative of part of request number 1.**

21.     All credit and debit card statements showing purchases of transportation tickets, including but not limited to airplane, train, bus, or boat tickets, you used while on call.

**ANSWER**: **Objection, this request is duplicative of part of request number 1.**

22.     All ridesharing records reflecting rides you took while on call, including but not limited to rides taken on Uber and Lyft.

**ANSWER: None. Mr. Eurich did not use any ridesharing while on call.**

23.     All billing statements, including but not limited to toll billing statements, physician billing statements, and dentist billing statements that reflect your activities while you were on call.

**ANSWER: None. Mr. Eurich has no billing statements in his possession.**

24.     All text messages, e-mails, or other electronic messages referencing your activities while you were on call.

**ANSWER: See Plaintiffs' - 000094–000107. All other correspondence made with the Defendant relating to being asked to not be on call were made with the company phone, which is no longer in Mr. Eurich's possession.**

25.     All text messages, e-mails, or other electronic messages asking you to perform work while on call.

**ANSWER: None. All correspondence made with the Defendant relating to being asked to be on-call were made verbally. All other correspondence made with the Defendant relating to being asked to not be on call were made with the company phone, which is no longer in Mr. Eurich's possession**

26.     All text messages, e-mails, or other electronic messages in which you respond to a request to perform work while on call.

**ANSWER: None. All correspondence made with the Defendant relating to responses to being asked to be on-call were made verbally. All other correspondence made with the Defendant relating to being asked to not be on call were made with the company phone, which is no longer in Mr. Eurich's possession**

27.     All text messages, e-mails, or other electronic messages in which you asked not to be on call, and all responses to such messages.

**ANSWER: None.**

28.     All text messages, e-mails, or other electronic messages in which you stated that you were unable or unwilling to respond to a request to perform work while you were on call, and all responses to such messages.

**ANSWER: None.**

29.     All calendar entries referencing your activities while on call.

**ANSWER: None.**

30.     All credit and debit card statements showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: None.**

31.    All receipts showing purchases of alcoholic beverages you consumed while you were on call.

**ANSWER: None.**

32.    All paycheck stubs reflecting any wages earned by you while employed with Defendant.

**ANSWER: Objection, these documents were submitted by Defendants to Plaintiffs. Thus this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, this request for production improperly shifts that legal burden.** *See Anderson v. Mt. Clemens Pottery Co.*, **328 U.S. 680 (1946).**

33.    All documents that you sent to, or received from, any government agency in relation to any allegation that is contained in the Complaint.

**ANSWER: None.**

34.    All statements, affidavits, diaries, notes or other documents from any potential witness or third-party, including Plaintiff, concerning the allegations in the Complaint concerning Defendant's alleged liability for unpaid overtime or minimum wages under the Fair Labor Standards Act or Florida law, including any alleged liability for a "willful" violation of the law and liquidated damages.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceed the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off of the ground, and responding to discovery. None of these notes are remotely discoverable.**

35.    All documents reflecting any complaints you made to any employee or agent of Defendant concerning your wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) you received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to other employees relating to Mr. Eurich's employment were made verbally.**

36.    All documents reflecting any complaints made by any other employee of Defendant to any agent or employee of Defendant concerning wages, hours, working conditions, terms and conditions of employment or other job-related issues, and any response(s) received from any employee or agent of Defendant, if any.

**ANSWER: None. All complaints to the Defendant relating to Mr. Eurich's employment were made verbally.**

37.     All statements, affidavits, interview notes, meeting notes, audio or video tape recordings, and handwritten or typewritten notes received from or taken from any person (including any former or current employees of Defendant) taken in connection with this action.

**ANSWER: Objection, the documents sought in this request are protected by the work-product privilege, and attorney-cliengt privilege, as the documents were prepared in anticipation of litigation and exceeds the scope of discovery. All notes are intake notes, from the Plaintiff's themselves and are protected by both work product privilege and attorney-client privilege. Most of these notes are handwritten, and resulted from multiple conversations, both getting the lawsuit off off the ground, and responding to discovery. None of these notes are remotely discoverable.**

38.     Any release, settlement agreement, or severance agreement which limits, reduces, or extinguishes the actual and/or potential liability of any party to this matter.

**ANSWER: None.**

39.     All documents given to you by Defendant or taken from Defendant by you.

**ANSWER: See Plaintiffs' – 000093–000111.**

40.     Any reports or documents prepared by any expert whom you expect to call as a witness in this case or whom you have consulted with in connection with this case.

**ANSWER: Objection, there is a proper time for expert witness discovery as outlined in the Federal Rules, and the Scheduling Order, this is not that time.**

41.     All documents, other than attorney-client communications, reflecting that Adam Eurich went to an attorney as alleged in Paragraph 50 of the *Richardson* Complaint.

**ANSWER: None.**

42.     All documents showing that Defendant knew Adam Eurich went to an attorney's office as alleged in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: None.**

43.     The "company phone" referenced in Paragraph 53 of the *Richardson* Complaint.

**ANSWER: The phone was stolen and reported so by Mr. Richardson.**