# EXHIBIT "C"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

        Plaintiff,

v.
                                          Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

        Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

        Plaintiffs,

v.
                                          Case No. 9:21-cv-80803

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

        Defendants.

_____/

**PLAINTIFF, ANTONIO RAMOS', ANSWERS**
**TO DEFENDANT'S FIRST INTERROGATORIES**

    Plaintiff, ANTONIO RAMOS, by and through the undersigned attorneys and pursuant to

Fed. R. Civ. P. 33, hereby submits its Answers to Defendant's First Interrogatories.

    Respectfully, this 22nd day of October 2021

1

LUBELL & ROSEN, LLC
Attorneys for Plaintiffs
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail: jhs@lubellrosen.com
       ged@lubellrosen.com

By: */s/Joshua H. Sheskin*
Joshua H. Sheskin, Esquire
Florida Bar No. 93028
George E. Dahdal, Esquire
Florida Bar No. 103144

## ANSWERS TO INTERROGATORIES

1.  Please identify all persons who you believe have any knowledge of any of the facts and circumstances surrounding the events set forth or alleged in Plaintiff's Complaint, any aspect of Plaintiff's claims, or of the damages sought in the Complaint, and state the facts or circumstances that are known by each person.

**ANSWER:**
    **i)**   **Robert Richardson, a plaintiff in the other action, worked at Florida Drawbridges with me and knows of all the facts and circumstances in the Complaint.**

    **ii)**   **Indiana Collazo, my girlfriend who I live with, knows of all the times I have complained about underpayment, the poor treatment by Defendant, and the challenges from being on call and not being compensated for it adequately.**

    **iii)**   **Antonio Ramos, Sr., my father, knows of the times I have complained about underpayment, the poor treatment by Defendant, and the challenges from being on call and not being compensated for it adequately. I would vent to my father about my issues working for Defendant.**

    **iv)**   **Neil Daugherty, another former co-worker, knows of the facts and circumstances surrounding Defendant's poor treatment and underpayment of its employees and the inadequate compensation while being on call. Other employees of Defendant also know of the facts and circumstances of these issues.**

2.  Please identify each person (aside from your legal counsel) with whom you have communicated about the subject matter of this action, including, but not limited to, each employee of Defendant to whom you complained regarding the subject matter of this action and anyone with whom you have communicated or attempted to communicate regarding the subject matter of this action.

**ANSWER: I communicated with Eric Obel, the supervisor for Florida Drawbridges, about how being on call may get in the way of going back to school. Eric said that if I wanted to go to school, this job is not for me. I further explained how I was not being paid enough for being on call and for putting my life on hold. Nothing was done after this conversation.**

      **I also communicated with Mr. Obel during the COVID-19 pandemic when Mr. Obel threatened that he would terminate me if I did not get my drivers' license reinstated within one week. Even though I have been making it to work on time and consistently with my suspended license from outside help, I scrambled to pay all outstanding fees to reinstate my license. Mr. Obel knew my license was reinstated, but I was still terminated within three weeks.**

      **I communicated with other bridge tenders on the job and spoke about how we were not being paid for taking on extra duties. For example, I normally work in the electrical unit, but I had to clean human feces and the toilet. The bridge tenders and I all shared the same sentiment that we were not being treated fairly.**

3.   Please identify each internet service provider used by you during the time you were employed by Defendant.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, and does not represent when the internet was used by Mr. Ramos while on call.**

**Additionally, Objection, there is Mr. Ramos' girlfriend in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**Objection, because the internet is shared with Mr. Ramos' girlfriend, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Richardson, or his girlfriend left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

4.   Please identify, by date and time, each instance where Defendant asked you to work while you were on call, and state your response to each such request.

**ANSWER: Objection, these documents were submitted to Defendant is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, this request for production improperly shifts that legal burden. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).**

5.   Please identify each of your cellular telephone providers during the time period you worked for Defendant and the telephone number associated with each such provider.

**ANSWER: Verizon at 561-859-2256**

6.   Please identify issuer of a credit or debit card possessed by you during the time you worked for Defendant.

**ANSWER: I had a personal credit card with Capital One and a personal debit card with Citibank during the time I worked for Defendant. I was also provided a company card, but I do not recall who the issuer of the company card was. I returned all company items upon my termination, so Defendant should know who issuer of the company card was.**

4

7.  Identify with specificity each and every occasion that you reported to or discussed with Defendant your contention or belief that you had not been paid compensation or overtime to which you believe you were entitled.

**ANSWER: I spoke to Eric Obel, the supervisor for Florida Drawbridges, when Mr. Obel stated that I was doing a good job and taking other duties. However, when I asked for a small pay raise, he stated that he could not do it.**

**In one instance, I asked for a pay raise and went through the proper channels and procedures for my request through the HR department. The HR department instructed me to copy Mr. Obel in an email with my request for a pay raise for the extra duties and for working on call consistently. No one responded to my email in months, and I never saw Mr. Obel.**

**I spoke with John Matthews, the electrical engineer on site, asking about a pay raise. Mr. Matthews responded that I was a good worker, but that he had to fire someone first before giving a raise. Even though people were terminated, I was never given any pay raise.**

**I also spoke with Eric Obel about how being on call may get in the way of going back to school. Eric said that if I wanted to go to school, this job is not for me. I further explained how I was not being paid enough for being on call and for putting my life on hold. Nothing was done after this conversation.**

8.  Please identify each family member, friend, person with whom you had a dating relationship, and acquaintance you interacted with while you were on call and state the frequency of such interactions with each such individual.

**ANSWER: I live with my girlfriend, Indiana Collazo, who I saw on almost a daily basis. There was an instance where I was at a BBQ at my neighbor's house, and I had a call in the middle of the BBQ to go back to the bridge. I do not recall my neighbor's name, but we were acquaintances. Other than these instances, I do not recall any other time I interacted with a family member, friend, person with whom you had a dating relationship, and acquaintance while I was on call.**

9.  Please identify each social media site, including but not limited to Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit, used by you during the time you worked for Defendant and identify your username or handle for each such site.

**ANSWER: I have a TikTok account under the handle "faceoutdabx." I also have a LinkedIn account under the handle "Antonio-Ramos-Jr."**

10. Please identify each internet-based entertainment source you subscribe to, including but not limited to Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Ramos was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Ramos' Girlfriend's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Antonio Ramos specifically, just the Ramos household.**

11. Have you ever been convicted of, or pled guilty or no contest to, any crime? Yes_____No_____. If yes, please state for each arrest, charge or conviction:

      a.  the crime or crimes;
      b.  the date of the conviction or plead;
      c.  the country, state, county and locality in which the conviction or plea occurred;
      d.  the disposition of the arrest, charge or conviction, including any penalty received.

**ANSWER: Objection, this interrogatory is irrelevant and will not lead to the discovery of admissible evidence. Whether Plaintiff was arrested has no bearing on the issues of this case and is not relevant to the circumstances surrounding Plaintiff's employment for Defendant, Plaintiff's time working on call, and whether a benefit was conferred on the employer or employee in this instant action.**

**Objection, the issue in this case is whether the Plaintiff was entitled to be paid for on call time, whether Plaintiff has been arrested, in the past, has nothing to do with the Defendant's failure to pay for on-call time, or the compensability of on-call time.**

**Objection this interrogatory is not limited in scope to crimes, or periods of time which would be admissible under the Federal Rules of Evidence, therefore, it is not reasonably calculated to lead to discoverable information, but rather is so broad it encompasses events that may have occurred far before the admissibility threshold under the Federal Rules.**

12. Please provide a detailed breakdown of all damages to which you claim you are entitled in this Lawsuit by specifically setting forth the amount of damages you are seeking and detailed computation or calculation used to arrive at such damages.

**ANSWER: See Statement of Claim.**

13. Identify each restaurant, including fast food restaurant, at which you ate or from which you ordered food while on call, including when you went to or ordered food from the restaurant, who you went with to the restaurant, and whether you were able to eat ordered food without interruption from Defendant.

**ANSWER: I tried to go get dinner at Juicy Crabs with my girlfriend. However, we were interrupted at dinner, and I could not finish the meal because I was called back to the bridge. Because of this incident, I only ordered take-out and could not trust eating in at a restaurant. I ordered take-out at Pavoli's Pizza, China Express, La Brasa, the local McDonalds, Dunkin Donuts, and Anita's Mexican Kitchen.**

14. Identify each individual you lived with during the time you were employed by Defendant.

**ANSWER: I lived with my girlfriend, Indiana Collazo, while I was employed by Defendant.**

15. Identify each movie you saw in a movie theater while you were on call, including the location of the theater, name of the movie, date of the movie, and person(s) with whom you saw the movie, and state whether you stayed to the end of the movie.

**ANSWER: None. I could not go to a movie because of fear that I would be called back in the bridge in the middle of the movie.**

16. Identify each sporting event – including you sports – you attended while on call, including the teams or individuals playing and the date of the event.

**ANSWER: None. I could not go to watch a sporting event because of fear that I would be called back in the bridge in the middle of the event.**

17. Please state the name and address of each and every person, other than your attorneys, that assisted in any way with answering these Interrogatories on your behalf, and specify as to which answer(s) each individual assisted or contributed.

**ANSWER: None.**

## VERIFICATION

STATE OF _Florida_ )
                           )
COUNTY OF _Palm Beach_ )

    BEFORE ME, the undersigned authority, personally appeared ANTONIO RAMOS, to me well known and known to me to be the person described in and who executed the foregoing instrument, and who is personally known to me or has produced _Antonio Ramos_ as identification, and who did take an oath, and swears under penalty of perjury that the foregoing is true and correct.

WITNESS my hand and official seal this 15TH day of _October_, 2021.


_Antonio Ramos Jr._

_Signed Name_ of Notary Public

_Devony Thomas_
Printed Name of Notary Public
My Commission Expires: _August 1, 2024_
Commission Number: _HH 024138_

DEVONY THOMAS
MY COMMISSION # HH 024138
EXPIRES: August 1, 2024
Bonded Thru Notary Public Underwriters

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

        Plaintiff,

v.
                                   Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

        Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

        Plaintiffs,

v.
                                   Case No. 9:21-cv-80803

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

        Defendants.

_____/

## PLAINTIFF, ROBERT RICHARDSON'S, ANSWERS
## TO DEFENDANT'S FIRST INTERROGATORIES

Plaintiff, ROBERT RICHARDSON, by and through the undersigned attorneys and

pursuant to Fed. R. Civ. P. 33, hereby submits its Answers to Defendant's First Interrogatories.

Respectfully, this 22nd day of October 2021

1

LUBELL & ROSEN, LLC
*Attorneys for Plaintiffs*
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail:    jhs@lubellrosen.com
              ged@lubellrosen.com
By: */s/Joshua H. Sheskin*

    Joshua H. Sheskin, Esquire
    Florida Bar No. 93028
    George E. Dahdal, Esquire
    Florida Bar No. 1031644

## ANSWERS TO INTERROGATORIES

1.   Please identify all persons who you believe have any knowledge of any of the facts and circumstances surrounding the events set forth or alleged in Plaintiff's Complaint, any aspect of Plaintiff's claims, or of the damages sought in the Complaint, and state the facts or circumstances that are known by each person.

**ANSWER:**

    i)       **All other plaintiffs, Antonio Ramos, Juan Guzman, and Adam Eurich, in this case worked at Florida Drawbridges with me and know of all the facts and circumstances in the Complaint.**

    ii)      **Other employees of Defendant would meet and discuss how there was no incentive to go to the job sites and to be on call. The employees of Defendant know of the poor treatment and underpayment of Defendant's employees.**

2.   Please identify each person (aside from your legal counsel) with whom you have communicated about the subject matter of this action, including, but not limited to, each employee of Defendant to whom you complained regarding the subject matter of this action and anyone with whom you have communicated or attempted to communicate regarding the subject matter of this action.

**ANSWER: I communicated with Antonio Ramos, Juan Guzman, and Adam Eurich regarding the lack of incentives and issues of working on call at the bridge, losing important employees because of the poor treatment, and the indifference Defendants had when we tried to talk to them about these issues.**

3.   Please identify each internet service provider used by you during the time you were employed by Defendant.

**ANSWER: Objection, this Interrogatory is not relevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, or mail programs check for updates to your mailbox, and, therefore, does not represent when the internet was used by Mr. Richardson while on call. Additionally, Objection, there is Mr. Richardson's girlfriend in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other. Hence the request is irrelevant because it cannot be narrowed by internet user, or actual online activity by a human user.**

**Objection, because the internet is shared with Mr. Richardson's girlfriend, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Richardson, or his girlfriend left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

3

4.   Please identify, by date and time, each instance where Defendant asked you to work while you were on call, and state your response to each such request.

**ANSWER: Objection, documents regarding same were submitted by Defendant to Plaintiff, thus, this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, including all hours worked, this request for production improperly shifts that legal burden.** *See Anderson v. Mt. Clemens Pottery Co.*, **328 U.S. 680 (1946).**

5.   Please identify each of your cellular telephone providers during the time period you worked for Defendant and the telephone number associated with each such provider.

**ANSWER: Verizon at 561-255-1921.**

6.   Please identify issuer of a credit or debit card possessed by you during the time you worked for Defendant.

**ANSWER: I had a personal credit card and personal debit card with Wells Fargo. My company card from Defendant was also with Wells Fargo.**

7.   Identify with specificity each and every occasion that you reported to or discussed with Defendant your contention or belief that you had not been paid compensation or overtime to which you believe you were entitled.

**ANSWER: On around October 2019, I went to my direct supervisor to inform him that he will burn people out with the on-call program because there are no incentives and that employees are being poorly compensated for being on call. The direct supervisor did nothing to help the situation. After two months, I went back to the direct supervisor and asked for incentives for being on call because it was taking away the employees' personal lives. The direct supervisor again did nothing to help.**

**I also communicated with Mr. Daniel Porter at a company Christmas party to try to change the on-call program because employees were getting burned out from the work required and no one was being paid enough for it. I warned him that employees were quitting their jobs because of the poor treatment.**

**I also went to Eric Obel to bring to his attention that the on-call program was burning people out, and that the company lost another really good mechanic because of it.  I informed him that he needed to change how the on-call program was done. In response, and to my surprise, Eric said, "go fuck yourself."  Adam Eurich, another plaintiff in this action, was standing in the same room when this conversation took place.**

4

8. Please identify each family member, friend, person with whom you had a dating relationship, and acquaintance you interacted with while you were on call and state the frequency of such interactions with each such individual.

**ANSWER: I lived with my girlfriend, Stephanie Pollen, who I saw on almost a daily basis. There was one time when I went to a birthday party at Sonny's BBQ, but I was called to the bridge before the food even arrived. After that incident, I did not interact with other family, friends, or acquaintances while on call because I took being on call very seriously and I did not want to risk me having to abruptly leave a social gathering.**

9. Please identify each social media site, including but not limited to Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit, used by you during the time you worked for Defendant and identify your username or handle for each such site.

**ANSWER: My TikTok username is rrichardson1496.**

10. Please identify each internet-based entertainment source you subscribe to, including but not limited to Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Richardson was using such sources while on call.**

**Objection, a record of any of these internet based entertainment resources would show Mr. Richardson's Girlfriend's access as well, and that menas the evidence is irrelevant, because it does not tell us anything about Robert Richardson specifically, just the Richardson household.**

11. Have you ever been convicted of, or pled guilty or no contest to, any crime? Yes___ No_____. If yes, please state for each arrest, charge or conviction:

**ANSWER: Objection, this interrogatory is irrelevant and will not lead to the discovery of admissible evidence. Whether Plaintiff was arrested has no bearing on the issues of this case and is not relevant to the circumstances surrounding Plaintiff's employment for Defendant, Plaintiff's time working on call, and whether a benefit was conferred on the employer or employee in the instant action.**

**Objection, the issue in this case is whether the Plaintiff was entitled to be paid for on call time, whether Plaintiff has been arrested, in the past, has nothing to do with the Defendant's failure to pay for on-call time, or the compensability of on-call time.**

**Objection this interrogatory is not limited in scope to crimes, or periods of time which would be admissible under the Federal Rules of Evidence, therefore, it is not reasonably calculated to lead to discoverable information, but rather is so broad it encompasses events that may have occurred far before the admissibility threshold under the Federal Rules.**

12. Please provide a detailed breakdown of all damages to which you claim you are entitled in this Lawsuit by specifically setting forth the amount of damages you are seeking and detailed computation or calculation used to arrive at such damages.

**ANSWER: See Statement of Claim.**

13. Identify each restaurant, including fast food restaurant, at which you ate or from which you ordered food while on call, including when you went to or ordered food from the restaurant, who you went with to the restaurant, and whether you were able to eat ordered food without interruption from Defendant.

**ANSWER: I went to Sonny's BBQ on one instance for a birthday. However, before the food arrived, I had to abruptly leave to the bridge because I was called. I do not even chance going to eat at restaurants anymore while on call because of the risk of abruptly leaving. I have occasionally ordered take out at McDonald's, Dunkin Donuts, Big Apple Pizza, Wendy's, and Chick-Fil-A.**

14. Identify each individual you lived with during the time you were employed by Defendant.

**ANSWER: I lived with my girlfriend, Stephanie Pollen, while I was employed by Defendant.**

15. Identify each movie you saw in a movie theater while you were on call, including the location of the theater, name of the movie, date of the movie, and person(s) with whom you saw the movie, and state whether you stayed to the end of the movie.

**ANSWER: None. I could not go to a movie because of the risk and embarrassment that I would be called back in the bridge in the middle of the movie.**

16. Identify each sporting event – including you sports – you attended while on call, including the teams or individuals playing and the date of the event.

**ANSWER: None. I could not go to watch a sporting event because of the risk and embarrassment that I would be called back in the bridge in the middle of the event.**

17. Please state the name and address of each and every person, other than your attorneys, that assisted in any way with answering these Interrogatories on your behalf, and specify as to which answer(s) each individual assisted or contributed.

**ANSWER: None.**

## VERIFICATION

STATE OF __FLORIDA_____)

COUNTY OF _Palm Beach_____)


      BEFORE ME, the undersigned authority, personally appeared ROBERT RICHARDSON, to me well known and known to me to be the person described in and who executed the foregoing instrument, and who is personally known to me or has produced _____ as identification, and who did take an oath, and swears under penalty of perjury that the foregoing is true and correct.

WITNESS my hand and official seal this _18th_ day of _October_ 2021.

_Robert D Richardson III_ _____

_____
Signed Name of Notary Public

_____
Printed Name of Notary Public
My Commission Expires: _____
Commission Number: _____

THERESA M. KUHN
MY COMMISSION # GG 181766
EXPIRES: May 5, 2022
Bonded Thru Notary Public Underwriters

7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

          Plaintiff,

v.

                                              Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,

          Defendants.

_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

          Plaintiffs,

v.

                                              Case No. 9:21-cv-80803

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

          Defendants.

_____/

**PLAINTIFF, JUAN GUZMAN's, ANSWERS**
**TO DEFENDANT'S FIRST INTERROGATORIES**

      Plaintiff, JUAN GUZMAN, by and through the undersigned attorneys and pursuant to

Fed. R. Civ. P. 33, hereby submits its Answers to Defendant's First Interrogatories.

Respectfully, this 22nd day of October 2021

1

LUBELL & ROSEN, LLC
*Attorneys for Plaintiffs*
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail: jhs@lubellrosen.com
            ged@lubellrosen.com

By: */s/Joshua H. Sheskin*
    Joshua H. Sheskin, Esquire
    Florida Bar No. 93028
    George E. Dahdal, Esquire
    Florida Bar No. 1031644

## ANSWERS TO INTERROGATORIES

1.  Please identify all persons who you believe have any knowledge of any of the facts and circumstances surrounding the events set forth or alleged in Plaintiff's Complaint, any aspect of Plaintiff's claims, or of the damages sought in the Complaint, and state the facts or circumstances that are known by each person.

**ANSWER:**
   **i)** **Robert Richardson, a plaintiff in this action, worked at Florida Drawbridges with me and knows of all the facts and circumstances in the Complaint.**
   **ii)** **All other plaintiffs in this case and know of all the facts and circumstances in the Complaint.**
   **iii)** **Other employees of Defendant would meet and discuss how there was no incentive to go to the job sites and to be on call. The employees of Defendant know of the poor treatment and underpayment of Defendant's employees. I do not recall the names of the employees at the meeting.**
   **iv)** **Wilma Guzman, my wife, knows of the underpayment and poor compensation while being on call, and the struggles of being on call.**

2.  Please identify each person (aside from your legal counsel) with whom you have communicated about the subject matter of this action, including, but not limited to, each employee of Defendant to whom you complained regarding the subject matter of this action and anyone with whom you have communicated or attempted to communicate regarding the subject matter of this action.

**ANSWER: I communicated with my wife, Wilma Guzman, complaining about the poor compensation of working on call at the bridge, putting my life on hold while being on call, and the poor treatment and indifference Defendant had when we tried to talk to my employers about this issue.**

   **I also communicated with all plaintiffs in this instant action about complaints we all shared regarding underpayment while being on call and the struggles associated with the poor compensation**

3.  Please identify each internet service provider used by you during the time you were employed by Defendant.

**ANSWER: Objection, this Interrogatory is not relevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, or mail programs check for updates to your mailbox, and does not represent when the internet was used by Mr. Guzman while on call.  Additionally, Objection, there is Mr. Guzman's wife in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other.**

4.   Please identify, by date and time, each instance where Defendant asked you to work while you were on call, and state your response to each such request.

**ANSWER: Objection, documents regarding same were submitted by Defendant to Plaintiff, thus this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, including all hours worked, this request for production improperly shifts that legal burden. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).**

5.   Please identify each of your cellular telephone providers during the time period you worked for Defendant and the telephone number associated with each such provider.

**ANSWER: T-Mobile at 561-452-2564.**

6.   Please identify issuer of a credit or debit card possessed by you during the time you worked for Defendant.

**ANSWER: I had a personal credit card and personal debit card with Chase bank. My company card from Defendant is also a Visa card with Chase bank.**

7.   Identify with specificity each and every occasion that you reported to or discussed with Defendant your contention or belief that you had not been paid compensation or overtime to which you believe you were entitled.

**ANSWER: There were meetings between employees and Defendant when I first started working asking for raises because of the extra duties and the underpayment for being on call.**

**I also spoke to a supervisor for a dollar raise after my first 90 days. My supervisor said he could not do anything about it, even though I expressed that I am being underpaid while on call and taking on extra duties. I asked my supervisor twice about this issue and nothing was ever done.**

8.   Please identify each family member, friend, person with whom you had a dating relationship, and acquaintance you interacted with while you were on call and state the frequency of such interactions with each such individual.

**ANSWER: I live with my wife, Wilma Guzman, who I saw on almost a daily basis. I did not interact with other family, friends, or acquaintances while on call because of fear of being called to the bridge during my time with them.**

9.   Please identify each social media site, including but not limited to Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit, used by you during the time you worked for Defendant and identify your username or handle for each such site.

**ANSWER: None. I am not on social media.**

4

10. Please identify each internet-based entertainment source you subscribe to, including but not limited to Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Guzman was using such sources while on call.**

11. Have you ever been convicted of, or pled guilty or no contest to, any crime? Yes_____No_____. If yes, please state for each arrest, charge or conviction:

**ANSWER: Objection, this interrogatory is irrelevant and will not lead to the discovery of admissible evidence. Whether Plaintiff was arrested has no bearing on the issues of this case and is not relevant to the circumstances surrounding Plaintiff's employment for Defendant, Plaintiff's time working on call, and whether a benefit was conferred on the employer or employee in the instant action.**

**Objection, the issue in this case is whether the Plaintiff was entitled to be paid for on call time, whether Plaintiff has been arrested, in the past, has nothing to do with the Defendant's failure to pay for on-call time, or the compensability of on-call time.**

**Objection this interrogatory is not limited in scope to crimes, or periods of time which would be admissible under the Federal Rules of Evidence, therefore, it is not reasonably calculated to lead to discoverable information, but rather is so broad it encompasses events that may have occurred far before the admissibility threshold under the Federal Rules.**

12. Please provide a detailed breakdown of all damages to which you claim you are entitled in this Lawsuit by specifically setting forth the amount of damages you are seeking and detailed computation or calculation used to arrive at such damages.

**ANSWER: See Statement of Claim.**

13. Identify each restaurant, including fast food restaurant, at which you ate or from which you ordered food while on call, including when you went to or ordered food from the restaurant, who you went with to the restaurant, and whether you were able to eat ordered food without interruption from Defendant.

**ANSWER: My wife cooks our meals. We do not go to restaurants while on call because it would be embarrassing to have to leave the restaurant in the middle of dinner if I am called to the bridge. I occasionally order takeout from the local Dunkin Donuts, McDonald's, China Queen, Krispy Kreme, La Brasa, Charleys Philly Steaks, Romeo's Pizza, and Burger King.**

14. Identify each individual you lived with during the time you were employed by Defendant.

**ANSWER: I lived with my wife, Wilma Guzman, while I was employed by Defendant.**

5

15. Identify each movie you saw in a movie theater while you were on call, including the location of the theater, name of the movie, date of the movie, and person(s) with whom you saw the movie, and state whether you stayed to the end of the movie.

**ANSWER: None. I could not go to a movie because of fear that I would be called back in the bridge in the middle of the movie. It would be embarrassing to me and my wife if we had to leave in the middle of a movie.**

16. Identify each sporting event – including you sports – you attended while on call, including the teams or individuals playing and the date of the event.

**ANSWER: None. I could not go to watch a sporting event because of fear that I would be called back in the bridge in the middle of the event. It would be embarrassing to me and my wife if we had to leave in the middle of a sporting event.**

17. Please state the name and address of each and every person, other than your attorneys, that assisted in any way with answering these Interrogatories on your behalf, and specify as to which answer(s) each individual assisted or contributed.

**ANSWER: None.**



Juan Carlos Guzman

## VERIFICATION

STATE OF FLORIDA _____ )
                                  )
COUNTY OF _Palm Beach_____ )

BEFORE ME, the undersigned authority, personally appeared JUAN GUZMAN, to me well known and known to me to be the person described in and who executed the foregoing instrument, and who is personally known to me or has produced _FL. Lic._____ as identification, and who did take an oath, and swears under penalty of perjury that the foregoing is true and correct.

WITNESS my hand and official seal this __18th__ day of _October___, 2021.

GLENN T. ALICASTRO
Commission # HH 067980
Expires February 9, 2025
Bonded Thru Budget Notary Services

Signed Name of Notary Public
_Glenn T Alicastro_
Printed Name of Notary Public
My Commission Expires: __2|9|25__
Commission Number: __HH06 7930__

7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANTONIO RAMOS, Individually and On
Behalf of All Others Similarly Situated, Pursuant
to 29 U.S.C. §216.,

       Plaintiff,

v.
                                    Case No. 9:21-cv-80844-WM

FLORIDA DRAWBRIDGES INC., d/b/a FDI
SERVICES, ERIC OBEL & LAURA PORTER,


       Defendants.
_____/

ROBERT RICHARDSON, Individually and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216,

       Plaintiffs,

v.
                                    Case No. 9:21-cv-80803

FLORIDA DRAWBRIDGES INC., d/b/a
FDI SERVICES, ERIC OBEL & LAURA
PORTER,

       Defendants.
_____/

**PLAINTIFF, ADAM EURICH'S, ANSWERS**
**TO DEFENDANT'S FIRST INTERROGATORIES**


    Plaintiff, ADAM EURICH, by and through the undersigned attorneys and pursuant to

Fed. R. Civ. P. 33, hereby submits its Answers to Defendant's First Interrogatories.


Respectfully, this 22nd day of October 2021

1

LUBELL & ROSEN, LLC
*Attorneys for Plaintiffs*
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail: jhs@lubellrosen.com
　　　　ged@lubellrosen.com

By: */s/Joshua H. Sheskin*

　　Joshua H. Sheskin, Esquire
　　Florida Bar No. 93028
　　George E. Dahdal, Esquire
　　Florida Bar No. 1031644

## ANSWERS TO INTERROGATORIES

1.  Please identify all persons who you believe have any knowledge of any of the facts and circumstances surrounding the events set forth or alleged in Plaintiff's Complaint, any aspect of Plaintiff's claims, or of the damages sought in the Complaint, and state the facts or circumstances that are known by each person.

**ANSWER: Robert Richardson, a plaintiff in this case, worked at Florida Drawbridges with me and knows all of the facts and circumstances in the Complaint.**

2.  Please identify each person (aside from your legal counsel) with whom you have communicated about the subject matter of this action, including, but not limited to, each employee of Defendant to whom you complained regarding the subject matter of this action and anyone with whom you have communicated or attempted to communicate regarding the subject matter of this action.

**ANSWER: I communicated with Robert Richardson regarding all aspects of this case, including the lack of incentives and poor pay of working on call at the bridge and losing important employees because of the poor treatment.**

3.  Please identify each internet service provider used by you during the time you were employed by Defendant.

**ANSWER: Objection, this Interrogatory is not relevant and is not reasonably related to the issues of this case. Devices access internet connection themselves without the user, such as when the device has the "Background App Refresh" setting running, or mail programs check for updates to your mailbox, and does not represent when the internet was used by Mr. Eurich while on call.**

**Additionally, Objection, there is Mr. Eurich's wife in the household, and they share an internet connection, it would be impossible to tell which one was online when, versus the other.**

**Objection, because the internet is shared with Mr. Eurich's wife, turning over her internet activities would be a violation of her privacy, and she is not a party to this suit.**

**Objection, if Mr. Eurich, or his wife left a cite open on the computer, like Facebook, or CNN, it would refresh regularly, and make it falsely seem as if a user were online.**

4.  Please identify, by date and time, each instance where Defendant asked you to work while you were on call, and state your response to each such request.

**ANSWER: Objection, documents regarding same were submitted by Defendant to Plaintiff, thus, this request is cumulative information that Defendant already possesses. Objection, it is the burden of the employer to maintain proper employment records, including all hours**

worked, this request for production improperly shifts that legal burden. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

5.   Please identify each of your cellular telephone providers during the time period you worked for Defendant and the telephone number associated with each such provider.

**ANSWER: MetroPCS at 561-532-8411.**

6.   Please identify issuer of a credit or debit card possessed by you during the time you worked for Defendant.

**ANSWER: I had a personal debit card with Chase.**

7.   Identify with specificity each and every occasion that you reported to or discussed with Defendant your contention or belief that you had not been paid compensation or overtime to which you believe you were entitled.

**ANSWER: I spoke with Mr. Eric Obel about not being paid for being on call and the lack of incentives because it took away my personal life. I told him that I cannot go fishing because of the risk of being on call. Eric Obel was indifferent about my concerns for the poor incentives of being on call.**

8.   Please identify each family member, friend, person with whom you had a dating relationship, and acquaintance you interacted with while you were on call and state the frequency of such interactions with each such individual.

**ANSWER: I lived with my wife, Jessica Eurich, who I saw on almost a daily basis. There was one time when I went to my daughter's birthday party with my brother-in-law, but I was called to the bridge in the middle of the party. Everyone at the party saw me having to leave in the middle of my daughter's birthday party. After that incident, I did not interact with other family, friends, or acquaintances while on call because I did not want to risk the embarrassment and the trouble of being called to the bridge abruptly.**

9.   Please identify each social media site, including but not limited to Facebook, Instagram, LinkedIn, Twitter, TikTok, Pintrest, YouTube, WhatsApp, and Reddit, used by you during the time you worked for Defendant and identify your username or handle for each such site.

**ANSWER: I have a Facebook account under my name, Adam Eurich.**

10. Please identify each internet-based entertainment source you subscribe to, including but not limited to Netflix, Hulu, Amazon Prime, YouTube, HBO Max, Peacock, Disney Plus, and Paramount Plus.

**ANSWER: Objection, this interrogatory is irrelevant and is not reasonably related to the issues of this case. Subscriptions to internet-based entertainment sources do not indicate whether Mr. Eurich was using such sources while on call.**

**Objection, a record of any of these internet-based entertainment resources would show Mr. Eurich's access as well, and that means the evidence is irrelevant, because it does not tell us anything about Adam Eurich specifically, just the Eurich household.**

11. Have you ever been convicted of, or pled guilty or no contest to, any crime? Yes_____No_____. If yes, please state for each arrest, charge or conviction:

**ANSWER: Objection, this interrogatory is irrelevant and will not lead to the discovery of admissible evidence. Whether Plaintiff was arrested has no bearing on the issues of this case and is not relevant to the circumstances surrounding Plaintiff's employment for Defendant, Plaintiff's time working on call, and whether a benefit was conferred on the employer or employee in the instant action.**

**Objection, the issue in this case is whether the Plaintiff was entitled to be paid for on call time, whether Plaintiff has been arrested, in the past, has nothing to do with the Defendant's failure to pay for on-call time, or the compensability of on-call time.**

**Objection this interrogatory is not limited in scope to crimes, or periods of time which would be admissible under the Federal Rules of Evidence, therefore, it is not reasonably calculated to lead to discoverable information, but rather is so broad it encompasses events that may have occurred far before the admissibility threshold under the Federal Rules.**

12. Please provide a detailed breakdown of all damages to which you claim you are entitled in this Lawsuit by specifically setting forth the amount of damages you are seeking and detailed computation or calculation used to arrive at such damages.

**ANSWER: See Statement of Claim.**

13. Identify each restaurant, including fast food restaurant, at which you ate or from which you ordered food while on call, including when you went to or ordered food from the restaurant, who you went with to the restaurant, and whether you were able to eat ordered food without interruption from Defendant.

**ANSWER: None. I stay in while on call because I do not want to risk being interrupted in the middle of the meal.**

14. Identify each individual you lived with during the time you were employed by Defendant.

**ANSWER: I lived with my wife, Jessica Eurich, while I was employed by Defendant.**

15. Identify each movie you saw in a movie theater while you were on call, including the location of the theater, name of the movie, date of the movie, and person(s) with whom you saw the movie, and state whether you stayed to the end of the movie.

**ANSWER: None. I could not go to a movie because of the risk that I would be called back in the bridge in the middle of the movie.**

16. Identify each sporting event – including you sports – you attended while on call, including the teams or individuals playing and the date of the event.

**ANSWER: None. I could not go to watch a sporting event because of the risk that I would be called back in the bridge in the middle of the event.**

17. Please state the name and address of each and every person, other than your attorneys, that assisted in any way with answering these Interrogatories on your behalf, and specify as to which answer(s) each individual assisted or contributed.

**ANSWER: None.**

Adam Eurich

## VERIFICATION

STATE OF __FLORIDA__ )
)
COUNTY OF _Palm Beach_ )

BEFORE ME, the undersigned authority, personally appeared ADAM EURICH, to me well known and known to me to be the person described in and who executed the foregoing instrument, and who is personally known to me or has produced ___FL ID. Card___ as identification, and who did take an oath, and swears under penalty of perjury that the foregoing is true and correct.

WITNESS my hand and official seal this _20th_ day of _Oct_ , 2021.



GLENN T. ALICASTRO
Commission # HH 067930
Expires February 9, 2025
Bonded Thru Budget Notary Services

Signed Name of Notary Public
_Glenn T. Alicastro_
Printed Name of Notary Public
My Commission Expires: _2/9/25_
Commission Number: _HH 06 7930_

7