**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ANTONIO RAMOS, Individually and On Behalf of All Others Similarly Situated, Pursuant to 29 U.S.C. §216., <br><br> Plaintiff, <br><br> v. <br><br> FLORIDA DRAWBRIDGES INC., d/b/a FDI SERVICES, ERIC OBEL & LAURA PORTER, <br><br> Defendants. <br> _____/ | Case No. 9:21-cv-80844-WM |
| ROBERT RICHARDSON, Individually and On Behalf of All Others Similarly Situated, Pursuant to 29 U.S.C. §216, <br><br> Plaintiffs, <br><br> v. <br><br> FLORIDA DRAWBRIDGES INC., d/b/a FDI SERVICES, ERIC OBEL & LAURA PORTER, <br><br> Defendants. <br> _____/ | Case No. 9:21-cv-80803 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPELL [DE 49]**

Plaintiffs, by and through undersigned counsel, hereby answer in opposition to Defendants' Motion to Compel, Docket Entry 49, in accordance with Docket Entry 50, and state as follows in opposition:

1

## **Memorandum of Law**

The Motion to Compel is not about Plaintiff Richardson's search history, he does not own a computer; it is about getting his kids' search histories. They are the ones with computers. There is no amount of fancy boot strapping, which can make a plaintiff's child's search history relevant nor discoverable. Other than pure speculation that *something* relevant could be discovered from the requested production, there is no actual argument that this production is relevant. If FLSA Plaintiffs must give up their entire internet search history, and that of their household as proposed by Defendants, it will have a chilling effect on FLSA filings around the Country. The idea that a plaintiff loses not some privacy, but all privacy, plus their family's privacy, will freeze filings, thus defeating the remedial purpose of the FLSA.

This is, probably, why neither Plaintiff, nor Defendant, can find a single case speaking to these specific requests to an FLSA plaintiff. Frankly, these requests have a deterrent impact on FLSA plaintiffs, and chances are no one has tried this much of a blatant attempt to bully Plaintiffs, hence the lack of precedent. There are cases, however, that hold less broad/intrusive requests are invalid in FLSA Cases. *See, Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2005 WL 2105024, at *2–3 (S.D. Fla. Aug. 29, 2005); *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346 (M.D. Fla. 2014); & *Caputi v. Topper Realty Corp.*, No. 14-CV-2634 JFB SIL, 2015 WL 893663, at *5–6 (E.D.N.Y. Feb. 25, 2015).

Because there is no precedent holding that the production requests in question are valid, and, because there is precedent holding that less intrusive requests are too invasive in FLSA cases, Plaintiffs are well grounded in their position. However, Plaintiffs are not naive to the stakes at issue. Defendants hope to claim that if Plaintiffs could watch a streaming service, or use the internet, then they are using the time for themselves. This would crush all potential FLSA on-call

time litigation because, today, everyone has a phone with internet access. The Court must rule the requested information has some probative value. The Court should consider how interim streaming a movie, or searching the internet, can be when waiting for something else. Watching a movie on your streaming service while waiting for a doctor does not mean you cannot have a colonoscopy immediately when it is your turn, just as one can pause streaming and work a bridge right away.

There are numerous reasons the Motion to Compel should be denied:

1. The Defendants' requests bear little to no relevance. Defendants admit they will obtain voluminous third-party private information, somewhere within which Defendants speculate there *could be* something useful about Plaintiffs. The undersigned can't imagine, and Defendants' haven't articulated, any useful information to be gleaned from the Plaintiffs' personal text messages.

2. Defendants are completely out of touch with the enormity of the burden they propose. Under Defendant's proposal any internet or streaming traffic not by a Plaintiff would need an affidavit to explain it was not that Plaintiff's use. Imagine the affidavits the Plaintiff's kids will need to produce. There are several other problems with this method, explained *infra.*, which make the requested production an impossible task.[1]

3. Defendants admit their discovery will violate the privacy of third parties, and suggest Plaintiffs do not have standing to assert an objection.[2] Certainly, one cannot make an argument that the private business of third parties is relevant to Plaintiffs' on-call time.

---

[1] How is this to be done? Once Plaintiff must call a third party to get a list of any of this, or texts from the past, or emails from the past, how are these documents in the custody and control of the Plaintiff, such that the Plaintiff must produce same? They are not.
[2] There is a process by which if Defendants want third party information, they can use subpoenas and give those parties the opportunity to object. However, Defendants look to circumvent the proper procedure under the Federal Rules.

What could be more overly burdensome than everyone who has ever used the Plaintiffs' internet, having to sign an affidavit?

The Motion to Compel overlooks other realities of the internet. Every device connected to the internet sends out, and receives, signals from the internet (including the TV box, Alexa, Google Home, Nest, a computer itself, a phone, etc.). Everything connected to the internet in your home is constantly adding to your browsing history by accessing the internet without a user. This makes any list of IP addresses accessed a hodgepodge of user initiated uses and device initiated uses.

Separating out and identifying which addresses are machine-initiated access of the internet, and which are person generated, may be easy in some situations and require an expert in others. If one could separate out the electronic devices connecting to the internet from a user, will Plaintiff need experts from Amazon, Comcast, Google, etc., to identify the non-user-initiated activity?

Plaintiffs would be unduly burdened by having to process thousands, or hundreds of thousands, of IP addresses, and collect countless affidavits, to track what one person's internet use is amongst a household, for four different households.

Plaintiffs, nor either counsel, can answer the question as to how to get a watch history from a streaming service. What we do know is that if Plaintiffs must call a third party to get an internet and streaming history, then the histories were not in the custody, control, or possession, of the Plaintiffs, and, therefore, Plaintiffs cannot be compelled to produce what they do not have. At a minimum, Plaintiffs do not have to produce internet histories, and streaming histories, because they are not currently under Plaintiffs' custody and control.

If we know that Plaintiff Richardson watched Star Wars Episode One while on-call, we know that he watched the first movie of the Skywalker Saga, but did that mean he was any less willing to report to a bridge when it broke, or able to within the thirty minutes? Yes, if the movie

were in a theater. However, Defendants want to subpoena the movies Plaintiffs watch at home. Had Plaintiff Richardson gotten a call he could just pause the movie and come back to it. Had Plaintiff Richardson been on a website, he could leave it on-screen and return when he got home.

Text messages and email sent on call are not relevant; overly burdensome to obtain; and they violate third-party privacy rights to produce. A text message indicates nothing about where the sender is, whether they are within 30 minutes of a bridge, nor what the Plaintiffs are doing while sending it. It is a terrible distraction to text and drive, but since you can be on the road to a bridge call out while texting, the fact that texts were sent and/or received, is irrelevant.

Emails take no time at all to send. Email is not indicative of if one is able to use the time for themselves, because no one would deny that a person, actively on the job, could send and receive emails and texts. You can send texts and emails with your voice, as well, so Plaintiffs could actively be working on a bridge and send a text or email.

The texts and emails are between Plaintiffs and third parties. Third parties who had a reasonable expectation of privacy, when they texted or emailed Plaintiffs. Defendants contend that Plaintiffs have no standing to enforce third party privacy rights, which is why there is a subpoena process, under the Rules, that give third parties an opportunity to object.

Defendants' argument, for a massive privacy violation of both the Plaintiffs and non-parties, is hubris. This is, literally, the Defendants' argument: "Plaintiff Ramos forgot he took an UBER on Christmas Eve, which Defendants did not need texts or emails to figure out, so now Defendants have to see everyone's texts and emails."

How does a Plaintiff, with his own case, forgetting he took an UBER, justify a mass invasion of privacy, when there is no solid argument that the Emails and Texts requested are remotely relevant, only that they might be relevant? The logical leap does not work because there

5

is no causal nexus between a Plaintiff forgetting he took an UBER on Christmas Eve, and needing to see Plaintiff's, let alone all Plaintiffs', texts and emails.

*Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346 (M.D. Fla. 2014), is closest to being on point. In that FLSA action the *Palma Court* ruled that the defendants could not rummage through information that the Plaintiffs generally withheld from the public. The *Palma Court* found that the intrusions involved in making the plaintiffs divulge their credit card transactions, phone records, and travel were too broad and violative of privacy.

The Security Guard in the booth watching the game while waiting to process people in and out the door is still on duty despite watching the game, so why would Plaintiffs be any different watching movies? The answer is that Defendants mean to equivocate watching something on TV or looking something up on the internet with using the time for oneself. However, the question is not what Plaintiffs could do, which everyone waiting in a doctors' office can do, but what they cannot do, and the importance of this time to the employer.

Defendants' Motion to Compel is an attempt to discourage the Plaintiffs, and every other FLSA Potential Plaintiff, from filing, or continuing to litigate, FLSA Actions. It is also an attempt to lower the standard of on-call compensability, to time not being compensable if one has a cell phone, or internet connection. Therefore, Defendants Motion must be denied.

### CONFERRAL REQUIREMENT OF L.R. 7.1

Via conferral the Plaintiffs have agreed to not oppose subpoenas to for phone records and offer provider information for internet providers and streaming services providers. Plaintiffs will provide the information; however, as seen within this pleading, the Plaintiffs oppose any production from these third parties. Undersigned hereby certifies that his first conferral over these issues occurred on November 22, 2021. By November 23 Undersigned Counsel had a 102 fever

and could not leave the facilities. However, there are two Counsel listed in this case, and nothing stopped Defendants' Counsel from picking up the phone, calling Lubell Rosen, and asking to speak to Joshua Bloom, who is also an attorney for Plaintiffs. On Friday, November 26, 2021, after having missed thanksgiving due to illness, Undersigned Counsel also attempted to confer, which was the first time Undersigned had been able to get back to work. Undersigned sent a thorough email addressing the issues and asking when we could call to confer. On Monday November 29th, 2021, Undersigned personally spoke with Chris Cascino and offered the Phone records, as he had on November 22, 2021, and what the names are of the specific carriers. Mr. Cascino proposed that we use attorneys' eyes-only agreements to get around privacy issues, however, my clients rejected same, because to them it does not make a difference whether the opposing party knows their private business, or everyone, it is a privacy invasion.

Respectfully submitted, this 2nd Day of December 2021,

LUBELL & ROSEN, LLC
200 S. Andrews Avenue, Suite 900
Ft. Lauderdale, FL  33301
Telephone: (954) 880-9500
Facsimile: (954) 755-2993

s/ Joshua H. Sheskin
Bar No. 93028
jhs@lubellrosen.com
jenny@lubellrosen.com