UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROBERT RICHARDSON,                                    Case No. 9:21-cv-80803
JUAN GUZMAN & ADAM EURICH
Individually, Collectively and
On Behalf of All Others Similarly Situated,
Pursuant to 29 U.S.C. §216.

        Plaintiffs,

v.

FLORIDA DRAWBRIDGES INC.,
d/b/a FDI SERVICES, ERIC OBEL &
LAURA PORTER,

        Defendants.
_____/

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEY FEES

Plaintiffs, by and through undersigned counsel, hereby reply to Defendants' response to the Plaintiffs' Motion for Attorney Fees (D.E. – 72), and, hereby, state the following in support of the original Motion for Fees (D.E. – 69):

## OVERVIEW OF ARGUMENT

Defendants' argument boils down to two false premises. First, the Defendants believe that the requested fees are excessive considering the recovery. Second, the Defendant falsely believe that the failure to discuss a settlement demand, is somehow ingratiating and productive. The former is false per-precedent, and the latter is false because, when there was a two-way conversation, the case settled.

The most ridiculous objection to time spent by Plaintiff, which the Defendants' Counsel makes, is that Defendants would not have created as much work for the Plaintiffs, nor fought the allegations so vigorously, had less been in controversy; an argument that is both empirically false,

1

and repugnant to their obligations as attorneys to fight for their clients. The Defendants also attach privileged settlement communications to their response. This is in incredibly poor taste, and all the communications show is that the Plaintiff was intent on settling and did not want to give a number without justifying same.

The second most egregious argument that the Defendants make is that the Plaintiffs took too long analyzing and conferring as to their discovery responses. The Defendants served discovery which, clearly, was evasive, non-responsive, filled with inapplicable objections, and internally contradictory. The Plaintiffs had to write a long conferral letter, which was basically a motion to compel, and then confer at length to get the Defendants to produce amended answers, which were not much better, but conveniently made it look like the Defendants had something to hide, which was a good angle to work at trial. Ultimately, the long conferral, and discretion of the Plaintiffs meant that there was no need for Court intervention, but that could have turned out differently, had Plaintiffs spent less time reviewing and conferring. The lack of responsiveness caused the Plaintiffs to constantly need to review what they had which was of any use as responsive to requests, to put together depositions. The Defendants think that the Plaintiffs could have memorized over 800 pages after one review.

## MEMORANDUM OF LAW

**I: The FLSA Depends on Attorney Fee Awards to Achieve its Public Policy Purpose, and, therefore, Frowns Upon Attorney Fee Awards Capped by Proportionality, or the Plaintiffs' Recovery, the Time Entries are Neither Excessive, nor Improper.**

A good faith attempt, like this one, to bring about fair pay practices, is what the FLSA awarding fees to the prevailing party is aimed at encouraging.

> "While reduced fee awards are proper in many cases, **"[f]ee awards should not simply be proportionate to the results obtained,"** especially in FLSA cases, as fee awards in FLSA cases are often greater than the amount recovered by the plaintiff**. *See James v.*

> *Wash Depot Holdings,* 489 F.Supp.2d 1341, 1347 (S.D.Fla.2007).
> **This is to ensure "that individuals with small claims can obtain**
> **representation necessary to enforce their rights."** *Brandt,* 2011
> WL 4625379, at *12."

*Estrada v. Alexim Trading Corp.*, 10-23696-CIV, 2012 WL 4449470, at *13 (S.D. Fla. Sept. 26, 2012)(Emphasis Added).

The purpose of the FLSA, and its text, do not lend themselves to fee awards limited to a

proportion of the recovery.

> "Finally, the Undersigned takes note that "[n]either the text nor the
> purpose of the FLSA, however, supports imposing a proportionality
> limit on recoverable attorneys' fees."

*Matiano v. 5th Ave. Tree Experts, Inc.*, 20-23972-CV, 2021 WL 414389, at *6 (S.D. Fla. Jan. 15, 2021) (Emphasis Added).

The Supreme Court's holding against proportionality of awards in civil rights cases has,

often, been applied to the FLSA.

> "The Eleventh Circuit affirmed the district court's fee award because
> **"whatever intuitive appeal [that the] proportionality argument**
> **may have is undercut by** *City of Riverside v. Rivera*, **477 U.S. 561,**
> **(1986), in which the Supreme Court rejected a proportionality**
> **argument for attorneys' fees** awarded under 42 U.S.C. §
> 1988." *P&K Rest. Enter., LLC*, 758 F. App'x at 851."

*Garcia v. Pajeoly Corp.*, 18-23399-CIV, 2020 WL 764127, at *5 (S.D. Fla. Jan. 10, 2020) (Emphasis Added).

What is clear at this point is that all counsel were confident in their chances of prevailing

on summary judgment. While Defendants argue that for Plaintiffs to prevail, Plaintiffs would have

to thread a tiny needle, Plaintiffs see it as a situation in which the FLSA could have been brought

into the modern era, considering the complete lack of authority existing after the proliferation of

the internet and smartphones. Lawyers do not decide when to settle, clients do.

The parties disagree as to the amounts which should be awarded in attorneys' fees.

Plaintiffs point out that the Defendants are talented, from the biggest law firm in the nation for labor law and created most of the work. It seems odd that Defendants position is that they would not have created as much work had the amount in controversy been lower; this seems like the suspension of reality as to how their Firm operates in action after action. *See, infra.*

Plaintiffs had to defeat two motions to dismiss with prejudice, and beat dismissal with prejudice the first time, giving the opportunity to amend, and won the second motion to dismiss. Plaintiffs, additionally, had to battle over discovery requests that were unduly invasive, all the way through a successful hearing. As for Plaintiffs' discovery, Plaintiffs had to write what basically amounted to a motion, and submit it to Defendants, which resulted in the settlement of discovery issues without an investment of time from this Court. Defendants objected to a massive amount of the discovery Plaintiffs served, wasting time by playing games, misapplying precedent, asserting numerous objections, and claiming not to know the definition of "on-call," and similar terms. Even more, on the eve of deposition, Defendants changed their designated corporate representative, requiring more work to prepare for the last-minute change. Note, the Defendants constantly changed the dates and orders of depositions, requiring preparation, and repreparation, and are now complaining about time expenditures Defendants occasioned.

Defendants are quick to point out how long it took to analyze, and confer regarding, their discovery responses, however, their own obstructionist bad faith responses caused those hours to be expended. Further, Defendants' responses were internally inconsistent, only a fraction was answered, and it included the wrong contract for services between FDI and FDOT, all contributed. There was feeble discovery, and then amended discovery, which both contributed to the expense. Finally, the fact that so much effort was put into what was basically a motion to compel, that

resulted in responses when served on Defendants, avoiding wasting the time of this Court, all suggests this time was reasonable.

Defendants claim that the amount in controversy is what drove up fees. However, that is hard to believe. It is not believable that, with a lesser amount in controversy, Defendants would have somehow not represented the interests of their client rigorously. This is a fiction, contrary to the rules of ethics, it essentially is Defendants saying we only do our job when there is a lot at stake, and not when the client pays us to. This is disproven, as will be shown below, by a case where the amount in controversy was less than $40,000 dollars and the case included three-hundred-forty-four docket entries. The argument is completely invalid.

Defendants are essentially arguing that they would not have moved to dismiss, twice, have served less demanding discovery, nor asked for the discovery necessitating a hearing, nor kept to the original deposition dates, requiring repetitive attorney time, refreshing their outlines and knowledge of the case, nor served less evasive discovery answers, had the amount in controversy been different. This is fiction is confirmed by the three-hundred-forty-four docket entries in a case over less than $40,000 dollars, which involved these same attorneys *Jean Emmanuel Pierre-Louis, et. al, v. Baggage Airline Guest Services, Inc.*, et. al. 0:19-cv-61306-RAR. That case also involved problems with the Defendants discovery responses, where they were also withholding information, and evasive.

> "As the Plaintiff points out, the Defendant has vigorously defended this case. **Such a vigorous defense necessarily requires the \*1354 Plaintiffs counsel to expend more hours and drives up the ultimate charge of attorneys fees billed to a non-prevailing defendant.** *See e.g. Rice v. Sunrise Express, Inc.,* 237 F.Supp.2d 962, 977 (S.D.Ind.2002)."

*James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353–54, (S.D. Fla. 2007)(Emphasis Added).

Defendants claim that a reasonable consumer would not pay for such a contingent chance of victory, however, that is not true. The consumers of legal services often chase slim chances of victory, especially since the view of the public is generally that litigation is a lottery people can retire with.

No one would pursue most FLSA cases if they had to pay for same, as the common hourly worker cannot afford a lawsuit over underpayment. If the standard is what a reasonable consumer of legal services would pay for, then no FLSA case would be brought, because the typical amount at issue in an FLSA case is not something that a paying consumer of legal services would pay to chase.

> "I also recognize the strong public interest served by the private enforcement of the FLSA and other civil rights laws and the role served by attorney fee awards to ensure the private enforcement of these laws. As recognized by the Court in its *Powell* fee order, "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be measured solely in monetary terms.""

*Perez v. Carey Intern., Inc.*, 06-22225-CIV, 2008 WL 4490750, at *14 (S.D. Fla. Sept. 26, 2008).

The simple fact of the matter is that the FLSA attorneys' fees provision is there for a public policy purpose, and without it, there would be no evolution of FLSA to fit the times, and clients would not be able to afford counsel. This is because the FLSA's protections are for hourly non-professional workers. In essence, the Defendants miss that the FLSA is a remedial statute, dependent on individuals to enforce same, through private causes of action, enabled by entitlement to attorneys' fees for prevailing plaintiffs. Public policy strongly favors that FLSA Plaintiffs' Attorneys be compensated fairly to ensure that there is a way for FLSA Plaintiffs to vindicate their rights.

While the level of success can be a factor considered, in the awarding of attorneys' fees, a cap based on the recovery, or proportionality, is inappropriate.

"In order to effectuate the comprehensive remedial purposes of the FLSA, § 216(b) provides that any employer who violates the minimum wage and overtime provisions of the Act is liable to their employees for unpaid minimum wages or overtime compensation, additional liquidated damages, attorney's fees and expenses."

*Strozier v. E\*Trade Fin. Corp.*, 1:12-CV-00330-AT, 2013 WL 12321962, at \*4 (N.D. Ga. Feb. 27, 2013).

"Given the nature of claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff. *See James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341, 1347 (S.D.Fla.2007)."

*Pyczynski v. Kirkland's Stores, Inc.*, 607-CV802-ORL-22KRS, 2008 WL 544864, at \*5 (M.D. Fla. Feb. 26, 2008).

**"Defendant also suggests that a reduction of the lodestar is appropriate to "more closely align the attorney's fees awarded to the level of success Plaintiff received," proposing a maximum award approximately equal to the settlement amount.** "Given the nature of claims under the FLSA and the remedial purpose of the Act, however, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff." *Pyczynski v. Kirkland's Stores, Inc. .,* 2008 WL 544864 at \*5 (M.D.Fla. Feb.26, 2008). Thus, **it would be improper to reduce the fee solely so the fees more closely matched the result."**

*Oliva v. Infinite Energy, Inc.*, 1:11-CV-232-MP-GRJ, 2013 WL 6815989, at \*13 (N.D. Fla. Dec. 24, 2013)(Emphasis Added).

**"The Supreme Court has "reject[ed] the proposition that fee awards ... should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).** Given the nature of claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff. *See James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341, 1347 (S.D.Fla.2007)."

*Pyczynski v. Kirkland's Stores, Inc.*, 607-CV802-ORL-22KRS, 2008 WL 544864, at \*5 (M.D. Fla. Feb. 26, 2008)(Emphasis Added).

**II: Defendants' Radio Silence, During the First Attempt to Settle, Spurned Additional Attorneys' Fees and Time, Because When Defendants and Plaintiffs Actually Talked the Second Time, We Settled Quickly.**

When Plaintiffs were asked for a demand, they started at what is a bargaining position. To ensure that Defendants knew that Plaintiffs were starting with a number that was extremely open to a significant cut, Joshua Bloom, Esq., called Christopher Cascino, Esq., to tell him it was a number that would cause sticker shock, but not to be discouraged, because while the number would cause sticker shock—it was just a starting point.

Defendants did not counter or take the attempt seriously to settle. Instead, they decided to pursue depositions and continue litigating. The Plaintiffs, by this time, urged their counsel to settle this case. Plaintiffs chose to attempt to settle, but Defendants chose to pursue depositions. Defendants seem to think that their non-participation in further settlement discussions, is the Plaintiffs' fault because Plaintiffs demanded too much. However, that did not mean that the Defendants could not have countered with a number they considered reasonable and continued the discussion.

Furthermore, Plaintiff could have made a Proposal for Settlement rather than asking for a demand. <u>The first attempt to settle ended with the Defendants' radio silence, which is not a true settlement attempt by Defendants, because the second time—when Defendants finally responded—the case settled. A discussion-based settlement may have happened the first-time settlement was on the table, but Defendants did not talk, they went radio silent.</u> Settlement was relatively easy once the parties talked to each other. It is a shame the Defendants did not participate in the discussion the first time.

If Defendants were so convinced that their numbers were reasonable, they should have made a Proposal for Settlement, the first time they wanted to settle, or at a minimum have a

conversation, which is what worked the second time settlement was attempted and it was successful.

<u>**CONCLUSION**</u>

The Defendants' specific objections are addressed in the exhibit attached hereto, and the responses speak for themselves. However, the Defendants two remaining main areas of argument, the proportionality argument, and the settlement argument, are not helpful to them, as shown above. The Plaintiffs, already, cut an enormous amount of time from their request, and that request was reasonable to begin with. Hence, the Plaintiffs humbly move this Court to award the requested amount of $108,312.50.

DATED this 28th day of September 2022.

LUBELL & ROSEN, LLC
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail: jhs@lubellrosen.com
          ged@lubellrosen.com
           jmb@lubellrosen.com

By: */s/Joshua Sheskin*
    Joshua H. Sheskin, Esquire
    Florida Bar No. 93028
    George E. Dahdal, Esquire
    Florida Bar No. 1031644
    Joshua M. Bloom, Esquire
    Florida Bar No. 88559