UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROBERT RICHARDSON,
JUAN GUZMAN, and ADAM EURICH,
individually, collectively, and on
behalf of all others similarly situated,
pursuant to 29 U.S.C. § 216,

       Plaintiffs,

v.                                                                        CASE NO. 21-cv-80803-MATTHEWMAN

FLORIDA DRAWBRIDGES INC.,
d/b/a FDI SERVICES, *et al.*,

       Defendants.
_____/

ANTONIO RAMOS, individually,
collectively, and on behalf of all
others similarly situated, pursuant
to 29 U.S.C. § 216,

       Plaintiff,

v.                                                                        CASE NO. 21-cv-80844-MATTHEWMAN

FLORIDA DRAWBRIDGES INC.,
d/b/a FDI SERVICES, *et al.*,

       Defendants.
_____/

FILED BY _____SW_____ D.C.

Feb 27, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' VERIFIED MOTIONS FOR ATTORNEYS' FEES**

    **THIS CAUSE** is before the Court upon the following: (1) Plaintiffs Robert Richardson,

Juan Guzman, and Adam Eurich's Verified Motion for Attorneys' Fees in case number 21-cv-

80803-WM [DE 69]; (2) Plaintiff Antonio Ramos' Verified Motion for Attorneys' Fees in case

1

number 21-cv-80844-WM [DE 56]; (3) Defendants, Florida Drawbridges, Inc. d/b/a FDI Services, Eric Obel, and Laura Porter's (collectively, "Defendants") Response in case number 21-cv-80803-WM [DE 72];[1] (4) Defendants' Response in case number 21-cv-80844-WM [DE 59];[2] (5) Plaintiffs Robert Richardson, Juan Guzman, and Adam Eurich's Reply in case number 21-cv-80803-WM [DE 74]; and (6) Plaintiff Antonio Ramos' Reply in case number 21-cv-80844-WM [DE 61].[3]

The Court is addressing the Verified Motion for Attorneys' Fees in case number 21-cv-80803-WM [DE 69] and the Verified Motion for Attorneys' Fees in case number 21-cv-80844-WM [DE 56] collectively, because both motions contain nearly identical legal argument. Moreover, Defendants' Response is a collective response to both motions, and the Collective Plaintiffs' Reply is, in turn, a uniform reply to Defendants' collective response. In this regard, while the Court is cognizant that the specific amount requested in each case and the corresponding attached billing entries (DEs 69-1 and 69-2 in case number 21-cv-80803-WM; DEs 56-1 and 56-2 in case number 21-cv-80844-WM) necessarily differ, the Court notes that Defendants object to billing practices common to both cases.

Further (and perhaps most importantly), the Settlement Agreement and Release—which simultaneously disposed of both cases and involved a $40,000 settlement amount—was submitted to Chambers for *in camera* review.[4]  There is no filing on the public docket in either 21-cv-80803-

---

[1] A sealed, unredacted version of the Response is available at DE 73, while an unsealed, redacted version of the Response is available at DE 72.

[2] A sealed, unredacted version of the Response is available at DE 60, while an unsealed, redacted version of the Response is available at DE 59.

[3] The Plaintiffs from 21-cv-80803-WM and the Plaintiff from 21-cv-80844-WM are hereinafter referred to as the "Collective Plaintiffs."

[4] While Defendants have redacted all reference to the settlement amount in the public versions of the Response in both cases, the Court is simply unable to address the Collective Plaintiffs' attorneys' fees motions without referencing

WM or 21-cv-80844-WM specifying how much of that settlement amount is attributable to each case, nor do the parties address such in their papers. Thus, the Court finds that considering both motions simultaneously is both necessary and proper.

## I.      BACKGROUND

In case number 21-cv-80803-WM, Plaintiffs Robert Richardson, Juan Guzman, and Adam Eurich sought unpaid overtime wages under the Fair Labor Standards Act in Count I of their Second Amended Complaint [DE 41]. As part of the Second Amended Complaint in that case, Plaintiff Adam Eurich also sought lost wages, certain other damages, and reasonable attorneys' fees and costs in connection with his claim for retaliation (Count II). [DE 41 at 10–11]. Similarly, in case number 21-cv-80844-WM, Plaintiff Antonio Ramos sought unpaid overtime wages under the Fair Labor Standards Act as part of his own Second Amended Complaint [DE 30]. However, unlike the Second Amended Complaint in case number 21-cv-80803-WM, Plaintiff Ramos' Second Amended Complaint contained only a single count.

On July 6, 2022, the parties reached a settlement and filed their Joint Motion for Approval of Settlement Agreement with the Court. [DE 62 in case number 21-cv-80803-WM; DE 49 in case number 21-cv-80844-WM]. Thereafter, on July 11, 2022, the Court held a fairness hearing via Zoom video teleconference, during which the Court heard from the parties' counsel regarding the fairness of the Collective Plaintiffs' settlement. [DE 64 in case number 21-cv-80803-WM; DE 51 in case number 21-cv-80844-WM]. That same day, the Court entered an "Order Granting the

---

the settlement amount. To expect the Court to address Defendants' argument that the Court should significantly reduce the Collective Plaintiffs' attorneys' fees in this case because the settlement amount was just a mere fraction of what the Collective Plaintiffs were requesting—without mentioning the settlement amount or the amount the Collective Plaintiffs were seeking in the first instance—is inappropriate as it would cause this Order to be incomplete, unclear, and confusing.

Parties' Joint Motion for Approval of Settlement Agreement and Dismissing . . . Action with

Prejudice" ("Order Approving Settlement") [DE 65 in case number 21-cv-80803-WM; DE 52 in

case number 21-cv-80844-WM]. Within the Court's Order Approving Settlement, in light of the

parties' Settlement Agreement (which resolved both cases simultaneously), the Court stated that

the Collective "Plaintiffs' counsel are entitled to reasonable attorneys' fees . . . which will be

negotiated or determined by the Court as provided in Local Rule 7.3."[5]  [DE 65 at 2 in case number

21-cv-80803-WM; DE 52 at 2 in case number 21-cv-80844-WM].

Accordingly, there is no question that the Collective Plaintiffs are entitled to reasonable

attorneys' fees. The remaining issue—and the source of the parties' disagreement—is the

determination of a proper attorneys' fees *amount*. On this matter, the parties vehemently disagree.

Simply stated, Defendants disagree with certain of the Collective Plaintiffs' billing practices, and

seek to "significantly" reduce the lodestar amount to account for the Collective Plaintiffs' lack of

success in both cases. It is with this backdrop that the Court now considers the Collective Plaintiffs'

attorneys' fees motions.

## II.      MOTION, RESPONSE, AND REPLY

### A.  The Collective Plaintiffs' Motions

In Plaintiffs Robert Richardson, Juan Guzman, and Adam Eurich's Verified Motion for

Attorneys' Fees in case number 21-cv-80803-WM [DE 69], Plaintiffs request $108,312.50 in

prevailing party attorneys' fees, to account for 323 hours Plaintiffs' counsel spent working on the

---

[5]  The Court also found that the Collective Plaintiffs' counsel was entitled to fees and costs under 29 U.S.C. § 216(b). [DE 65 at 2 in case number 21-cv-80803-WM; DE 52 at 2 in case number 21-cv-80844-WM]. To that end, the parties agreed to an amount of costs, filing an Unopposed Memorandum in Support of Bill of Costs ("Costs Motion") [DE 66 in case number 21-cv-80803-WM; DE 53 in case number 21-cv-80844-WM]. The Court subsequently entered an Order granting in part and denying in part the Collective Plaintiffs' Unopposed Costs Motions [DE 67 in case number 21-cv-80803-WM; DE 54 in case number 21-cv-80844-WM].

case. [DE 69 at 1, 3]. Likewise, in Plaintiff Antonio Ramos' Verified Motion for Attorneys' Fees in case number 21-cv-80844-WM [DE 56], Plaintiff requests $90,165.00 in prevailing party attorneys' fees, to account for 261.6 hours Plaintiff's counsel spent working on the case. [DE 56 at 1, 3].

In support, the Collective Plaintiffs argue that "[t]his was not just another FLSA case in a crowded field of FLSA cases,"[6] but involved "complex matters of law, first impression, competing versions of the facts, and hundreds of hours of work, as Defendants did their job well, and made nothing easy." [DEs 69 at 1, 56 at 1].[7] Indeed, the Collective Plaintiffs note that the attorneys on the case "did not take other work that was non-contingency based to make time for this action," and posit that the case was "highly undesirable," requiring "a drastic modification of existing law to succeed." *Id.* at 2. According to the Collective Plaintiffs, "[w]hile a good faith basis existed in law for the claim and to modify the law, when faced with [the Collective] Plaintiffs' claims, Counsel assumed a giant risk by applying a part of the FLSA usually used on nannies, to bridge maintenance workers, and agreed to move forward in a fashion where recovery of fees was in no way guaranteed, or, necessarily, probable." *Id.* at 3.

Turning to the law surrounding reasonable attorneys' fees, the Collective Plaintiffs argue that—because of the Court's approval of the parties' settlement agreement—the Collective Plaintiffs are entitled to an award of reasonable attorneys' fees. *Id.* at 3. The Collective Plaintiffs then go through each of the twelve factors enumerated within *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), arguing that they have exercised proper billing judgment in making their attorneys' fees request. *Id.* at 3–15.

---

[6] Unless stated otherwise, any mention of the "case" is in reference to both 21-cv-80803-WM and 21-cv-80844-WM.
[7] All references to DE 69 are from 21-cv-80803-WM. All references to DE 56 are from 21-cv-80844-WM.

With respect to the first *Johnson* factor—the time and labor required—the Collective Plaintiffs argue that "[t]his was a unique case, which involved issues of first impression, two motions to dismiss, several discovery disputes—one of which involved a hearing, [and] several in depth conferrals with Defendants' counsel."[8] *Id.* at 5. While the Collective Plaintiffs acknowledge that 21-cv-80803-WM and 21-cv-80844-WM were consolidated for discovery purposes, the Collective Plaintiffs argue that the cases had "separate, and different, responses to the motions to dismiss." *Id.* Moreover, the Collective Plaintiffs contend that the "conferral process was so thorough between the parties" that the parties were able to resolve a complex discovery dispute through conferral, and were able to narrow certain issues on the motion to compel that was filed with the Court. *Id.* at 6. And, the Collective Plaintiffs point to detailed deposition preparation, to Defendants asking for "extensive information and documents in their discovery," and to the consistent correspondence between the Collective Plaintiffs and counsel as factors necessitating an increased attorneys' fees amount. *Id.* at 6–7.

Next, as to the second and third *Johnson* factors—the novelty and complexity of the issues presented and the skill required, respectively—the Collective Plaintiffs argue that "[t]he action set out to make new law the day it was filed and the complexity and novelty of that cannot be understated." *Id.* at 7. In fact, the Collective Plaintiffs argue that "[n]either party had precedent, from a case on point, to contradict the other side." *Id.* at 7–8. With that said, the Collective Plaintiffs again note that this was "not a garden variety FLSA case which a hundred lawyers in South Florida could or would have taken," and that—while the Collective Plaintiffs provided a settlement number that was "very preliminary"—Defendants "chose not to respond to the number

---

[8] There were, in fact, two motions to dismiss filed in *both* cases.

at all." *Id.* at 8. Further, although "[t]here was a chance this case would change how a whole sector

of the economy is paid, . . . [the Collective Plaintiffs' counsel maintains that it is the clients that]

decide when to settle cases." [DEs 69 at 8–9, 56 at 8].

    With respect to the fourth, fifth, sixth, eight, and ninth *Johnson* factors—the preclusion of

employment due to acceptance of the case, the customary fee, whether the fee is fixed or

contingent, the amount involved and the results obtained, and the experience, reputation, and

ability of the attorneys, respectively—the Collective Plaintiffs note that this case involved a

contingency fee, and argue that taking on the case involved a "significant sacrifice" for the

attorneys involved in the case. *Id.* at 9. In this regard, the Collective Plaintiffs state that, "[w]hile

recovery was limited, that did not affect the amount of time it took to receive any recovery at all."

*Id.* at 11. In fact, although the Collective Plaintiffs acknowledge that "a major factor in determining

fee entitlement [is] the results obtained"—and that here, "the results were not ideal"—the

Collective Plaintiffs contend that:

> [T]he action took significant work. By the time there was a settlement, there were
> already two depositions taken, four days of deposition preparation, and a fifth was
> in progress. The Defendants moved to dismiss twice, there were several discovery
> disputes including a hearing, Defendants moved the dates of depositions several
> times, and changed their corporate representative less than two days before the
> depositions of Defendants started.

*Id.* Accordingly, the Collective Plaintiffs argue that the "[f]ee award[] should not simply be

proportionate to the results obtained by the Plaintiff." *Id.* (quoting *Andrews v. United States*, 122

F.3d 1367, 1376 (11th Cir. 1997)).

    With respect to the seventh and tenth *Johnson* factors—time limitations imposed by the

clients or the circumstances, and the undesirability of the case, respectively—the Collective

Plaintiffs admit that "[t]here were not many time limitations imposed[,] . . . except that settlement

be made before depositions, a last-minute decision, which led to a lower settlement amount." *Id.* at 12. However, the Collective Plaintiffs argue that the instant case was "undesirable to say the least," as a case seeking to change the law "is not an attractive endeavor unless the change is certain, which in this action it was not." *Id.*

Next, turning to the eleventh *Johnson* factor—the nature and length of the professional relationship with the clients—the Collective Plaintiffs contend that constant updates were required throughout the proceedings, which necessarily led to frequent questions. [DEs 69 at 12, 56 at 12–13]. To this end, the Collective Plaintiffs assert that, "[w]hile it is true that there is a lot of time billed for client communication, it is also true that the [Clients were] entitled to the updates, and to their questions." *Id.* at 13.

Finally, with respect to the twelfth *Johnson* factor—awards in similar cases—it is the Collective Plaintiffs' position that "none of the opinions, which can be found on Westlaw, of this Court, can be compared to this case, because this case presented a novel and complex issue, whereas the opinions found on Westlaw constitute garden variety FLSA cases." [DEs 69 at 14, 56 at 13]. In support, the Collective Plaintiffs argue that "[t]his action was complex and involved challenges to the way in which an entire portion of the workforce is paid, therefore expending numerous hours on same is justified." *Id.* at 14.

Thus, in sum, the Collective Plaintiffs argue that they have exercised billing judgment in this case because: (1) they "no charged" a significant amount of time in the case; (2) the depositions were difficult to prepare for; (3) the case was "incredibly" complex; and (4) the case involved unsophisticated clients who needed to be prepared for depositions. *Id.* at 14–16.

8

## B. **Defendants' Response(s)**

In Defendants' Response in case number 21-cv-80803-WM [DE 72] and Response in case number 21-cv-80844-WM [DE 59]—which the Court again notes are identical—Defendants take significant issue with the fact that the Collective Plaintiffs are now seeking approximately $200,000 in attorneys' fees after settling the two cases for a combined $40,000. [DEs 72 at 2, 59 at 2].[9] Defendants argue that the Court "should reduce [the Collective] Plaintiffs' counsel's hours because they are unreasonable and then reduce the lodestar because of Plaintiffs' counsel's (a) lack of success and (b) lack of proportionality to the recovery of Plaintiffs." *Id.* at 3

As to Defendants' argument that the Collective Plaintiffs' claimed hours are unreasonable, Defendants first note that the Collective Plaintiffs seek fees for nearly 600 hours of work "on a case [the Collective] Plaintiffs' counsel admits could only succeed if they could establish 'new law.'" *Id.* at 4. Indeed, Defendants argue that the time expended by the Collective Plaintiffs' counsel to establish "new law" was not reasonable for three reasons. *Id.*

First, Defendants argue that "most of the hours claimed by [the Collective] Plaintiffs' counsel were 'unnecessary' because Plaintiffs' exorbitant damages calculations and demands caused this litigation to drag on for far longer than it would have if Plaintiffs had been reasonable from the beginning." *Id.* To this end, Defendants note that the Collective Plaintiffs sought $1,554,984.00 (in addition to attorneys' fees and costs), and demanded $800,000 to settle the case—which, while Defendants acknowledge the Collective Plaintiffs' counsel made clear was not a final demand—"was so exorbitant that Defendants and their counsel presumed that settlement was impossible." *Id.* at 5.

---

[9]  All references to DE 72 are from 21-cv-80803-WM. All references to DE 59 are from 21-cv-80844-WM.

Second, Defendants argue that "most of [the Collective] Plaintiffs' billing entries are objectionable on their face." *Id.* at 6. Specifically, Defendants argue that: (1) "[m]any entries contain unreimbursable internal conferences involving multiple attorneys and other time-keepers"; (2) "[o]ther entries contain excessive numbers of hours billed on tasks"; (3) "[o]thers have block billing"; (4) "[o]thers reflect needlessly redundant work"; and (5) "[o]thers reflect work done going down the proverbial rabbit hole to pursue dubious retaliation claims that were never inserted into this litigation." *Id.* In support of their argument, in case number 21-cv-80803-WM, Defendants have provided 72 pages of specific objections to the Collective Plaintiffs' billing logs [DE 72-1], and in case number 21-cv-80844-WM, have provided 48 pages of specific objections to the Collective Plaintiffs' billing logs [DE 59-1]. The objections cite the same cases and generally contain the same supporting assertions. *See* DEs 72-1 and 59-1.

Third, Defendants argue that, because "Plaintiffs' counsel admit they had little chance of success," the Court should consider "what a 'client of means who was seriously intent on vindicating similar rights' would pay for, 'recognizing that in the private sector the economically rational person engages in some cost benefit analysis.'" [DEs 72 at 7, 59 at 7] (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1999)). Stated differently, Defendants contend that "a rational client would not pay a lawyer large sums to advance a legally dubious claim" and that the Collective Plaintiffs' counsel's "decision to spend hundreds of hours on such a claim was not reasonable." *Id.*

Next, turning to the Collective Plaintiffs' recovery in this case, Defendants argue that "[a]fter setting the lodestar, the Court should reduce [the Collective] Plaintiffs' counsel's lodestar because, with [the Collective] Plaintiffs receiving a mere **2.5%** of what they were seeking, [the Collective] Plaintiffs' counsel had little success and their request for fees amounting to five times

10

what [the Collective] Plaintiffs received is grossly disproportionate." *Id.* at 7. In this regard, with respect to the lack of success, Defendants point out that the Collective Plaintiffs themselves admit the results were "not ideal," and cite to a number of cases where courts have reduced the lodestar to account for the lack of success. *Id.* at 7–8.

As to proportionality, Defendants contend that "the Court should reduce the lodestar because it is grossly disproportionate to the amount received by [the Collective] Plaintiffs." *Id.* at 9. On this matter, Defendants note the Collective "Plaintiffs' assertion that Defendants' vigorous defense negates the proportionality issue is without merit," as the instant case did not proceed to trial or summary judgment and instead settled "as soon as the [Collective] Plaintiffs stopped seeking excessive damage awards Defendants would never accept." *Id.* at 9–10. Further, Defendants assert that "FLSA suits are not meant to become a cottage industry divorced from the benefits they provide, and the fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith." *Id.* at 10 (quoting *Ford v. Navika Cap. Grp., LLC*, No. 14-CV-311, 2017 WL 1381668, at *8 (S.D. Ala. Apr. 17, 2017)).

### C.  <u>The Collective Plaintiffs' Replies</u>

In the Collective Plaintiffs' Reply in case number 21-cv-80803-WM [DE 74] and Reply in case number 21-cv-80844-WM [DE 61]—which, again, the Court notes contain identical legal argument—the Collective Plaintiffs argue that:

> Defendants' argument boils down to two false premises. First, the Defendants believe that the requested fees are excessive considering the recovery. Second, the Defendants falsely believe that the failure to discuss a settlement demand, is somehow ingratiating and productive. The former is false per-precedent, and the latter is false because, when there was a two-way conversation, the case settled.

[DEs 74 at 1, 61 at 1].[10]  With that said, the Collective Plaintiffs challenge Defendants' assertion that "Defendants would not have created as much work for the Plaintiffs, nor fought the allegations so vigorously, had less been in controversy," and challenge Defendants' assertion that the Collective Plaintiffs "took too long analyzing and conferring as to their discovery responses." *Id.* at 1–2. With respect to the former, the Collective Plaintiffs point out that the same defense counsel—in a case involving less than $40,000—was part of the reason that case necessitated 344 docket entries. *Id.* at 5. As to the latter, the Collective Plaintiffs note that Defendants' "own obstructionist bad faith responses caused . . . hours to be expended." *Id.* at 4.

Thereafter, the Collective Plaintiffs turn to a public policy argument, arguing "that the FLSA is a remedial statute, dependent on individuals to enforce same, through private causes of action, enabled by entitlement to attorneys' fees for prevailing plaintiffs." *Id.* at 6. According to the Collective Plaintiffs, "[t]he purpose of the FLSA, and its text, do not lend themselves to fee awards limited to a proportion of the recovery." *Id.* at 6, 2–3. In fact, the Collective Plaintiffs note that "[t]he Supreme Court's holding against proportionality of awards in civil rights cases has, often, been applied to the FLSA." *Id.* at 3. To this end, the Collective Plaintiffs cite several cases for the proposition that, in FLSA cases, "a cap based on the recovery, or proportionality, is inappropriate." *Id.* at 6. Regardless, the Collective Plaintiffs point out that "[l]awyers do not decide when to settle, clients do." *Id.* at 3. And, the Collective Plaintiffs note that they nonetheless still "had to defeat two motions to dismiss with prejudice, . . . beat dismissal with prejudice the first time, giving the opportunity to amend, . . . won the second motion to dismiss[,] . . . [and] had to

---

[10]  All references to DE 74 are from 21-cv-80803-WM. All references to DE 61 are from 21-cv-80844-WM.

battle over discovery requests that were unduly invasive, all the way through a successful hearing." *Id.* at 3–4.

Finally, the Collective Plaintiffs essentially blame the number of attorneys' fees required in this case on Defendants' "radio silence" after the Collective Plaintiffs "started at what is a bargaining position." *Id.* at 8. The Collective Plaintiffs argue that Defendants' "radio silence . . . is not a true settlement attempt," noting that "the second time—when Defendants finally responded—the case settled." *Id.*

Importantly, in case number 21-cv-80803-WM, the Collective Plaintiffs have filed a 136-page reply exhibit, responding to Defendants' 72 pages of specific billing entry objections. [DE 74-1]. In case number 21-cv-80844-WM, the Collective Plaintiffs have also filed a 105-page reply exhibit, responding to Defendants' 48 pages of specific billing entry objections. [DE 61-1].

## I.        LEGAL STANDARD

### A.  Entitlement

Here, in case numbers 21-cv-80803-WM and 21-cv-80844-WM, the Court granted the parties' Joint Motion for Approval of Settlement Agreement, finding that the settlement was fair and reasonable. Therefore, there is no question that the Collective Plaintiffs are the prevailing parties in each of their respective cases. *See Johnson v. Bay Bays Chicken & Waffles, LLC*, No. 17-80021-CIV, 2017 WL 5952895, at *2 (S.D. Fla. Nov. 6, 2017) ("In the case at hand, the Court granted Plaintiff's Motion for Approval of Settlement awarding Plaintiff a fair and reasonable settlement, so he is the prevailing party under the FLSA statute and is entitled to recover attorney's fees.") (citing *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003)). In fact, the sole dispute between the parties concerns the determination of a proper attorneys' fees amount.

13

### B.  **Reasonable Attorneys' Fees Amount**

A reasonable attorneys' fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1350 n.2 (citation omitted). However, the Court may also use its own experience in assessing the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman*, 836 F.2d at 1299)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. With regard to the type of evidence that the fee claimant should produce in support of a claim, in *Barnes*, the

Eleventh Circuit has stated that

> [t]he "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303.   That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted).

168 F.3d at 427.

In submitting a request for attorneys' fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See id.* (quoting *Norman*, 836 F.2d at 1301). The burden rests on the movant to submit a comprehensive request for fees so the court can determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Further, while "[t]he most important factor to consider [in determining a reasonable attorneys' fees award] is the result obtained," in FLSA cases, "it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007) (citation omitted). This is "to ensure that individuals

with relatively small claims can obtain representation necessary to enforce their rights." *Brandt v. Magnificent Quality Florals Corp.*, No. 07-20129-CIV, 2011 WL 4625379, at *12 (S.D. Fla. Sept. 30, 2011). "[F]ee awards should [also] not simply be proportionate to the results obtained." *Estrada v. Alexim Trading Corp.*, No. 10-23696-CIV, 2012 WL 4449470, at *13 (S.D. Fla. Sept. 26, 2012). In this regard, while the Eleventh Circuit has already rejected a proportionality argument concerning damages and attorneys' fees awarded under 42 U.S.C. § 1988, "[t]he Eleventh Circuit [has] reasoned that a proportionality argument [i]s even weaker in an FLSA case because the statute renders attorneys' fees mandatory under the statute." *Garcia v. Pajeoly Corp.*, No. 18-23399-Civ, 2020 WL 764127, at *5 (S.D. Fla. Jan. 10, 2020), *report and recommendation adopted*, No. 18-cv-23399-Civ, 2020 WL 764035 (S.D. Fla. Jan. 31, 2020). However, this does not mean "an entitlement to attorney's fees can[] be a carte blanche license for [plaintiffs] to outrageously and in bad faith run up attorney fees without any threat of sanction." *Goss*, 248 F. Supp. 2d at 1168–69.

      1. <u>Reasonable Hourly Rate</u>

        a. <u>Joshua H. Sheskin and Joshua M. Bloom</u>

According to the Collective Plaintiffs' Motions, Joshua H. Sheskin, Esq., is claiming a rate of $400.00 per hour. [DEs 69 at 10, 56 at 10]. Mr. Sheskin was admitted to The Florida Bar in 2011, "appears on almost 400 Federal Dockets (according to Westlaw), has tried FLSA cases, and appears on multiple FLSA Appellate Dockets, having fully briefed more than one of those appearances, and presented two oral arguments." *Id.* at 9. Further, Mr. Sheskin "is a partner at Lubell Rosen, LLC[,] where he started as an associate handling FLSA and ADA matters in 2017." *Id.* Before that, Mr. Sheskin "worked at two FLSA focused firms," taking his first FLSA case in 2013. *Id.*

16

Joshua M. Bloom, Esq., on the other hand, is claiming a rate of $350.00 per hour. *Id.* at 10. Mr. Bloom has been practicing law since early 2011, "has spent almost his entire career with Lubell Rosen, and . . . has taken several FLSA cases to trial." *Id.* at 9. Mr. Bloom has also been part of many FLSA cases "and has focused his career on complex litigation, Health Law, Labor Law, and Civil Rights law." *Id.* at 10.

Here, the Court finds that a $350.00 hourly rate is appropriate as to both Mr. Sheskin and Mr. Bloom, as both attorneys had roughly eleven years of experience at the time the motions for attorneys' fees were filed. *See Cauzo v. Katane LLC*, No. 20-CV-60396, 2022 WL 18358842, at *2 (S.D. Fla. Dec. 16, 2022), *report and recommendation adopted sub nom. Cauzo v. Guarnera*, No. 20-CV-60396, 2023 WL 246833 (S.D. Fla. Jan. 18, 2023) (finding a $375.00 hourly rate appropriate for an attorney with approximately 13 years of experience in employment law); *Southern-Owners Ins. Co. v. Marquez*, No. 20-81431, 2022 WL 2651661, at *14 (S.D. Fla. July 8, 2022) (finding a $335.00 hourly rate appropriate for an attorney with roughly ten years of experience).

      b.  <u>George Dahdal</u>

According to the Collective Plaintiffs, George Dahdal, Esq., is claiming a rate of $175.00 per hour. [DEs 69 at 9, 56 at 9]. Mr. Dahdal started practicing law in 2021 and is an associate at Lubell Rosen. *Id.* at 9–10.

Here, drawing from the Court's own knowledge and experience, the Court concludes that a $175 hourly rate is a reasonable rate for a newly barred attorney in South Florida, and therefore, for Mr. Dahdal in this case. *See Garcia v. United Recovery Sols., Inc.*, No. 17-CV-81199, 2018 WL 3701151, at *3–4 (S.D. Fla. July 16, 2018), *report and recommendation adopted*, No. 17-cv-81199, 2018 WL 4409981 (S.D. Fla. Aug. 1, 2018) (finding a $200 hourly rate reasonable for an

attorney in South Florida with less than 3 years of experience); *Wales-Walden v. Ak "N" Eli, LLC*, No. 17-20658-CIV, 2018 WL 6812692, at *2 (S.D. Fla. Oct. 12, 2018), *report and recommendation adopted*, No. 17-cv-20658, 2018 WL 6807316 (S.D. Fla. Oct. 29, 2018) (finding $200 hourly rate reasonable for a second-year associate). Indeed, the Undersigned has already found a $200 hourly rate to be reasonable for an attorney with approximately one year of experience in South Florida. *See H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1281 (S.D. Fla. 2019); *Southern-Owners Ins. Co.*, 2022 WL 2651661, at *14.

   2.   Number of Hours Reasonably Expended

      a.   Specific Billing Entries

   The Court has independently reviewed the time entries in case number 21-cv-80803-WM [DEs 69-1 and 69-2] and the time entries in case number 21-cv-80844-WM [DEs 56-1 and 56-2]—as well as the specific objections lodged to the hours in each respective case, and the Collective Plaintiffs' replies to those objections—to determine if the hours claimed are reasonable and if the time spent falls within the scope of recoverable tasks. In doing so, the Court has determined a number of deficiencies in the Collective Plaintiffs' billing entries.

   First, the billing logs are filled with a substantial number of entries involving multiple attorneys billing for the same task. The Eleventh Circuit recognizes that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)). To recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer

18

litigation. *Barnes*, 168 F.3d 423; *see also Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings.").

Here, the Collective Plaintiffs have not demonstrated the necessity of multiple attorneys billing for the same task. For example, there was no need for two attorneys to bill for the same conference call with the client to discuss the case. [DE 69-2 at 3 in case number 21-cv-80803-WM]. Moreover, it was not reasonable for the Collective Plaintiffs to continuously bill for case strategy meetings involving multiple attorneys, without further elaboration. [DE 56-2 at 23 in case number 21-cv-80844-WM]. *See Korman v. Iglesias*, No. 18-21028-CV, 2019 WL 2142521, at *5 (S.D. Fla. Apr. 4, 2019), *report and recommendation adopted*, No. 18-21028-CIV, 2019 WL 2141655 (S.D. Fla. Apr. 25, 2019) ("We will also exclude from the fee award the time billed by both attorneys spent 'discussing' the case at hand."). Nor was it reasonable for each of the attorneys to bill for reviewing each new case filing.

Second, the billing logs contain unnecessary or excessive hours. "Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2019 WL 4694147, at *4 (S.D. Fla. Aug. 27, 2019) (citing *Norman*, 836 F.2d at 1301). Here, for example, in case number 21-cv-80803-WM, there was a billing entry for .2 hours to "[t]ell Robert his website information is useful." [DE 69-2 at 8]. Further, in case number 21-cv-80844-WM, Mr. Dahdal billed 0.3 hours for drafting a notice of deposition, but then spent another 0.3 hours drafting a notice of deposition tailored toward another individual that same day. [DE 56-2 at 24]. And, as another example, in *both* cases, the same 2.1 hours were billed for drafting a conferral letter on January 14, 2022. [DE 69-2 at 19 in case number

21-80803-WM; DE 69-2 at 14 in case number 21-cv-80844-WM].

Third, the billing records submitted by the Collective Plaintiffs' counsel evidence at least some instances of block billing. "Block billing is impermissible because it prevents the Court from determining which portion of the fees billed on a particular date is recoverable and which is not." *Winslow v. Indiheartandmind, Inc.*, No. 21-cv-80800, 2022 WL 426513, at *3 (S.D. Fla. Feb. 11, 2022). Here, for example, in case number 21-cv-80803-WM, the Collective Plaintiffs' counsel billed for reviewing and analyzing discovery, and for then coming up with a list of "what we really need responses to." [DE 69-2 at 19]. However, it does appear that Defendants misunderstand the nature of block billing. Whenever the Collective Plaintiffs' counsel goes into additional detail in certain billing entries, Defendants object to the lengthy and detailed explanation as "block billing," even where it is clear that only one task was being performed.

Fourth, it appears that the Collective Plaintiffs' counsel billed for certain clerical work. Time entries for clerical or administrative tasks should be excluded. *See Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *3 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, No. 19-CV-60108, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020), *appeal dismissed*, No. 21-10010-J, 2021 WL 1327212 (11th Cir. Feb. 5, 2021); *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999)). Here, Mr. Sheskin billed 0.5 hours drafting and filing a notice of mediator selection in case number 21-cv-80803-WM [DE 69-2 at 30], and in fact billed another

20

0.5 hours drafting and filing a notice of mediator selection that same date in case number 21-cv-80844-WM [DE 56-2 at 22].

With that said, it does appear that a number of Defendants' billing entry objections are meritless. To the extent Defendants often refer to certain billing entries as "vague," Defendants' position at times strains credulity. As an example, on April 23, 2021, counsel billed 5.1 hours for research, with an incredibly detailed explanation concerning said research. [DE 69-2 at 1]. Yet, somehow, Defendants classify the explanation as "unintelligibly vague." [DE 72-1 at 3]. Moreover, Defendants at times object to entries which were clearly marked "NO CHARGE." *Compare* DE 69-2 at 9, *with* DE 72-1 at 20. And, Defendants appear to be responding to billing entries other than those attached to the motions. *Compare* DE 69-2 at 6, *with* DE 72-1 at 14 (objecting based on a "blank entry" when the entry was, in fact, not blank).

In any event, while Defendants pointed out in their Response that "neither the Court nor Defendants should be expected to review and detail every instance of improper time entries," Defendants have nonetheless done so and forced the Court to expend scarce judicial resources going through each of the (largely) meritless objections. That is not to say the Collective Plaintiffs have made the situation any easier. In both cases, the Collective Plaintiffs' first exhibit—which breaks down the hours by task—does not match the total hours claimed in the case. For example, in case number 21-cv-80803-WM, the total number of hours referenced in the first exhibit is 393.2 hours (before no charging 94.7 hours).[11]  [DE 69-2 at 1]. However, the total of hours referenced in the second exhibit is 425.6 hours (before no charging 101.6 hours).[12]  [DE 69-2 at 35].

---

[11]  The Court also notes that, halfway through the first exhibit, the Collective Plaintiffs begin using different columns for Mr. Bloom and Mr. Sheskin.

[12]  The Court notes that the total number of hours claimed is 323 instead of 324 because the Collective Plaintiffs are not seeking compensation for the 1 hour worked on the case by Jenny Perez.

Accordingly, it is clear that a reduction in the lodestar to account for these deficiencies is appropriate. But before determining an exact reduction, the Court will address the Collective Plaintiffs' lack of success in the case and the proportionality of their attorneys' fees request.

      b.  <u>Lack of Success and Proportionality</u>

In case number 22-cv-80803-WM, Plaintiffs Robert Richardson, Juan Guzman, and Adam Eurich sought $1,208,880 in liquidated damages. [DE 42]. In case number 22-cv-80844-WM, Plaintiff Antonio Ramos sought $345,600 in liquidated damages [DE 31]. Thus, the Collective Plaintiffs sought a combined $1,554,480 in liquidated damages, plus reasonable attorneys' fees and costs. However, the Collective Plaintiffs settled the case for a total of just $40,000 for both cases. Thus, the Collective Plaintiffs' recovery represented approximately 2.6% of the Collective Plaintiffs' liquidated damages request. Despite this limited recovery, the Collective Plaintiffs are now seeking nearly $200,000 in attorneys' fees.

First, it is clear to the Court that purely or solely examining the proportionality of the $40,000 settlement amount in comparison to the to the $200,000 requested attorneys' fees amount would be improper. *See Garcia*, 2020 WL 764127, at *5 ("The Eleventh Circuit [has] reasoned that a proportionality argument [i]s even weaker in an FLSA case because the statute renders attorneys' fees mandatory under the statute."). In fact, in the very case Defendants cite for the proposition that the Court should reduce the lodestar "because it is grossly disproportionate to the amount received by Plaintiffs"—*Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001)—the court noted that "[t]he parties seem to agree that a rule of proportionality between a recovery and an attorneys' fee award is inappropriate." *Wales*, 192 F. Supp. 2d at 1327. Indeed, in *Wales*, the court actually *approved* of a $352,225.40 attorneys' fees award in comparison to a recovery of "less than $21,000," albeit after substantially reducing the lodestar. *Id.* at 1328–29.

22

However, the Collective Plaintiffs' recovery of just 2.6% of the total requested liquidated damages amount does warrant further discussion. In this regard, Defendants cite a number of cases where courts have compared the plaintiffs' recovery to the amount referenced in the statement of claim. *See, e.g.*, *Madden v. Just Believe Recovery Ctr., LLC*, 391 F. Supp. 3d 1121, 1127 (S.D. Fla. 2019) (utilizing the recovery of just 16% of the $10,521.88 amount originally claimed as a factor supporting fee reduction and reducing the lodestar by 75%). Moreover, Defendants cite several cases with significant reductions in the lodestar amount due to plaintiffs' lack of success. *See Brandt*, 2011 WL 4625379, at *12 (reducing lodestar by 70% to account for limited success); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, No. 08-20128-CIV, 2011 WL 917742, at *5–6 (S.D. Fla. Jan. 24, 2011), *report and recommendation adopted*, No. 08-20128-CIV, 2011 WL 917838 (S.D. Fla. Feb. 22, 2011) (noting that a further downward adjustment of the lodestar was not warranted when the court had already reduced the plaintiff's recovery by 72% to account for limited success); *Roldan v. Pure Air Sols, Inc.*, No. 07-22203-Civ, 2010 WL 410571, at *7 (S.D. Fla. Jan. 29, 2010) (reducing the lodestar by 85% to account for the lack of success in the case).

Accordingly, while the Collective Plaintiffs may argue that this case was far from the "garden variety" FLSA case, the Court would be remiss if it did not take into consideration the Collective Plaintiffs' recovery of just 2.6% of the claimed liquidated damages amount (obtained from the Collective Plaintiffs' statements of claim). On this matter, while the Court is cognizant of the public policy behind the FLSA, the Court finds that a substantial reduction in the lodestar is warranted for a number of reasons. Indeed, to the extent the Collective Plaintiffs' counsel argues that it is the clients that decide when to settle the case and not the attorneys, it is notable that the Collective Plaintiffs themselves sought fit to accept $40,000 to settle the case when $1,554,480 in

liquidated damages were initially sought. That factor, combined with the Collective Plaintiffs' admission that the case sought to establish new law, leads the Court to the inescapable conclusion that a substantial reduction is appropriate to account for, *inter alia*, the Collective Plaintiffs' lack of success across both cases.

However, the Court does find that Defendants are partly to blame here for the number of hours expended, as Defendants admit that they did not respond to the $800,000 initial settlement request because they (incorrectly) assumed that settlement would be an impossibility. Moreover, it would be patently unfair to overly penalize the Collective Plaintiffs' counsel for taking on a case that sought to establish new law. Thus, under the facts of this case, the Court finds that the substantial reduction referenced in Defendants' cited cases (that is, generally approximately 75%) would be improper. And, as stated below, the Court finds that a 50% total reduction in the lodestar is appropriate after accounting for both the billing deficiencies and the Collective Plaintiffs' lack of success in the case.

　　3.　Lodestar Amount

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *1 (S.D. Fla. Oct. 20, 2017). Here, the Undersigned finds that an across-the-board reduction in hours is appropriate in this case to account for the billing deficiencies identified above, and the lack of success across both cases. The Court will therefore reduce the lodestar by 50% total.

Consequently, in case number 21-cv-80803-WM, the fee award is $35,787.50 for Mr. Sheskin (reflecting 204.5 hours at an hourly rate of $350.00, reduced by 50%), $5,775.00 for Mr.

24

Bloom (reflecting 33 hours at an hourly rate of $350.00, reduced by 50%), and $7,481.25 for Mr. Dahdal (reflecting 85.5 hours at an hourly rate of $175.00, reduced by 50%). This amounts to $49,043.75 in total attorneys' fees for case number 21-cv-80803-WM.[13]

In case number 21-cv-80844-WM, the total fee award is $30,275.00 for Mr. Sheskin (reflecting 173 hours at an hourly rate of $350.00, reduced by 50%), $5,460.00 for Mr. Bloom (reflecting 31.2 hours at an hourly rate of $350.00, reduced by 50%), and $5,022.50 for Mr. Dahdal (reflecting 57.4 hours at an hourly rate of $175.00, reduced by 50%). This amounts to $40,757.50 in total attorneys' fees for case number 21-cv-80844-WM.[14]  Therefore, the combined attorneys' fees award across *both* cases is $89,801.25.

### III.   CONCLUSION

In light of the foregoing, the Verified Motion for Attorneys' Fees in case number 21-cv-80803-WM [DE 69] and the Verified Motion for Attorneys' Fees in case number 21-cv-80844-WM [DE 56] are **GRANTED IN PART and DENIED IN PART**. Specifically, the Court finds that the Collective Plaintiffs are entitled to $49,043.75 in case number 21-cv-80803-WM, and to $40,757.50 in case number 21-cv-80844-WM (and, therefore $89,801.25 total in both cases). The Court will enter a separate judgment for this amount.[15]

---

[13]  The Collective Plaintiffs are claiming 204.5 hours for Mr. Sheskin, 33 hours for Mr. Bloom, and 85.5 hours for Mr. Dahdal in case number 21-cv-80803-WM. [DE 69-2 at 36].

[14]  The Collective Plaintiffs are claiming 173 hours for Mr. Sheskin, 31.2 hours for Mr. Bloom, and 57.4 hours for Mr. Dahdal in case number 21-cv-80844-WM. [DE 56-2 at 28].

[15]  The Court is aware that the Collective Plaintiffs stated "[a] supplement will be submitted for the time post-case negotiating, or litigating, fees." [DE 72 at 1; DE 56 at 1]. However, such supplement has not been filed after several months and therefore that issue has been waived.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of February, 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge